In the MATTER OF the GUARDIANSHIP OF THERESE B.:
WALWORTH COUNTY, Petitioner-Respondent,

v.

THERESE B., Respondent-Appellant.†

Court of Appeals

*No. 03–0967. Submitted on briefs August 14, 2003.—
Decided September 3, 2003.*

2003 WI App 223

(Also reported in 671 N.W.2d 377.)

† Petition to review dismissed 10-6-03.

310

 

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Martha K. Askins*, assistant state public defender, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Gary Rehfeldt*, assistant corporation counsel - Walworth County, Elkhorn.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J. Wisconsin makes full due process statutorily available to individuals subject to involuntary guardianship and protective placement petitions. Among the protections available is the requirement that an expert witness cannot simply summarize the findings and opinions of others but must reach an independent opinion only after a disinterested review of all relevant records. The record in this case does not support Therese B.'s contention that the expert witness simply regurgitated the opinions of others and the circuit court erred in not sustaining her objection to the admission of the expert's testimony and opinion. In addition, there is substantial and credible evidence to support the circuit court's conclusion that Therese is incompetent and in need of protective placement. Therefore, we affirm.

## PROCEDURAL BACKGROUND

¶ 2. Cheryle Gasch, a social worker with the Walworth County Department of Human Services (County) filed a Petition for Guardianship and Protective Place-

ment of Therese. The petition alleged that Therese required a permanent guardian and protective placement because "[d]ue to Chronic mental illness (Schizophrenia Paranoid Type) she is substantially unable to manage her property or care for herself." The circuit court appointed a guardian ad litem and a psychologist to furnish the court with a written report concerning Therese's mental condition. Therese opposed the petition and the state public defender appointed adversary counsel for her.

¶ 3. At the evidentiary hearing, the County presented the testimony of the examining psychologist, Dr. Steven Braam, and the social worker. Therese lodged an objection to the testimony of Dr. Braam; she contended that Dr. Braam could not testify about the opinions formed by any other physician or psychologist who may have examined her because such testimony would be hearsay and would violate her confrontation rights. The circuit court overruled the objection, concluding that Dr. Braam could rely upon collateral sources, including the opinions of others, in testifying as to his professional opinion. The court also concluded that because Dr. Braam's testimony was an exception to the hearsay rule, there was no violation of Therese's confrontation rights. Dr. Braam testified that in his professional opinion Therese suffered from schizophrenia, paranoid type, the condition was permanent, and she has a primary need for residential custody and placement. The social worker also testified that Therese had a primary need for residential care and custody. Therese presented the testimony of Dr. Ronald G. Rubin, a psychiatrist who examined Therese on behalf of the State of Wisconsin, to determine if she matched the federal government's criteria for having a serious mental illness. He testified that he strongly disagreed with

the diagnosis of schizophrenia, paranoid type, and believed that her problems were caused by Graves' Disease. At the conclusion of the hearing, the circuit court granted the petition, appointed a guardian for Therese and ordered her to be protectively placed. Further facts will be set forth later.

## DISCUSSION

¶ 4. On appeal, Therese contends that the circuit court erred in admitting the written report and testimony of Dr. Braam, the licensed psychologist appointed to examine her pursuant to Wis. Stat. § 880.33(1) (2001–02).[1] She complains that Dr. Braam's report and testimony were based entirely on hearsay because she did not cooperate with his examination and he instead had to reply upon the reports previously prepared by Robert Loiben, M.D., and David Thompson, Ph.D. Therese argues that because the County did not call Dr. Loiben or Dr. Thompson to testify, she was denied the opportunity to cross-examine them and to challenge their qualifications and diagnosis. She claims that Dr. Braam simply restated and summarized the findings of others and she was deprived of her right to cross-examine those who had previously examined her, a right guaranteed by § 880.33(2)(a)1.

¶ 5. She also contends that the evidence is insufficient to support the circuit court's conclusion that she is incompetent due to a "mental disability." Finally, she asserts that even if there is sufficient evidence to support the conclusion that she is incompetent, there is no evidence that she is in need of protective placement.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

## A. Hearsay Testimony of Examining Psychologist

██

¶ 6. Before considering Therese's first argument, we turn to the County's proposition that she is estopped from "complaining that Dr. Braam's testimony and report were based on hearsay because she refused to talk with him, forcing that result." WISCONSIN STAT. § 880.33(1) provides that the examining professional inform the proposed ward that

> he or she has a right to remain silent and that the examiner is required to report to the court even if the person remains silent. The issuance of such a warning to the person prior to each examination establishes a presumption that the person understands that he or she need not speak to the examiner.

It would be fundamentally unfair and a denial of due process to assure a person, through the warning required by § 880.33(1), that he or she has the right to remain silent and then penalize him or her for exercising that right by holding his or her silence judicially estops him or her from challenging the testimony of the reporting professional.

██

¶ 7. We agree with Therese that WIS. STAT. § 880.33(2)(a)1 guarantees her the right to cross-examine the physician or psychologist appointed to examine her and report to the circuit court.[2] In *R.S. v.*

---

[2] WISCONSIN STAT. § 880.33(2)(a)1 contains the procedural due process guarantees for every person alleged to be incompetent and in need of a guardian.

> The proposed ward has the right to counsel whether or not present at the hearing on determination of competency. The court shall in

*Milwaukee County,* 162 Wis. 2d 197, 209, 470 N.W.2d 260 (1991), the supreme court held that in contested guardianship proceedings, the petitioner was required "to produce the licensed professional reporting to the court to testify in person . . . and that the proposed ward has the right to cross-examine the witness." The court also provided that:

> A witness in a contested guardianship proceeding would have to be qualified to give a medical or psychological opinion on, for example, a diagnosis of the proposed ward's mental disorder or disability and whether the proposed ward's inability to care for himself or herself is caused by the mental condition alleged in the petition, not a physical disability. Section 880.01(4).

all cases require the appointment of an attorney as guardian ad litem in accordance with s. 757.48(1) and shall in addition require representation by full legal counsel whenever the petition contains the allegations under s. 880.07(1m) or if, at least 72 hours before the hearing, the alleged incompetent requests; the guardian ad litem or any other person states that the alleged incompetent is opposed to the guardianship petition; or the court determines that the interests of justice require it. The proposed ward has the right to a trial by a jury if demanded by the proposed ward, attorney or guardian ad litem, except that if the petition contains the allegations under s. 880.07(1m) and if notice of the time set for the hearing has previously been provided to the proposed ward and his or her counsel, a jury trial is deemed waived unless demanded at least 48 hours prior to the time set for the hearing. The number of jurors shall be determined under s. 756.06(2)(b). The proposed ward, attorney or guardian ad litem shall have the right to present and cross-examine witnesses, including the physician or psychologist reporting to the court under sub. (1). The attorney or guardian ad litem for the proposed ward shall be provided with a copy of the report of the physician or psychologist at least 96 hours in advance of the hearing. Any final decision of the court is subject to the right of appeal.

*R.S.*, 162 Wis. 2d at 210 n.10.[3]

■

¶ 8. It is well settled that it is "proper for a physician to make a diagnosis based in part upon medical evidence of which he has no personal knowledge but which he gleaned from the reports of others." *Karl v. Employers Ins. of Wausau*, 78 Wis. 2d 284, 299, 254 N.W.2d 255 (1977).[4] However, there are two important qualifications of this rule. First, although WIS. STAT. § 907.03 allows an expert to base an opinion on hearsay, it does not transform the hearsay into admissible evidence. *State v. Watson*, 227 Wis. 2d 167, 198, 595 N.W.2d 403 (1999). The circuit court must determine when the underlying hearsay may reach the trier of fact through examination of the expert, with cautioning instructions, and when it must be excluded altogether. *Id.* at 200–01. In *State v. Coogan*, 154 Wis. 2d 387, 399 n.4, 453 N.W.2d 186 (Ct. App. 1990), we sounded a cautionary note:

[3] We reject the County's suggestion that Therese should have deposed or subpoenaed the professionals who had previously examined her if she had wanted to contest their findings. It is the County that bears the burden of proof. *See R.S. v. Milwaukee County*, 162 Wis. 2d 197, 210, 470 N.W.2d 260 (1991). As we explain, due process requires the County to produce one or more licensed professionals to testify in person as to their independent opinions; the County does not meet its burden of proof by presenting an expert who serves as nothing more than a conduit for the opinions of others.

[4] This well-settled rule is codified in WIS. STAT. § 907.03:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

319

We need not reach the question of whether an expert's opinion based solely on inadmissible evidence, but that of a type reasonably relied on in his field, is admissible. However, this court has suggested that at some point when the reliability of the underlying evidence is called seriously into question, it is permissible to bar the expert's testimony.

¶ 9. Second, WIS. STAT. § 907.03 does not give license to the proponent of an expert to use the expert solely as a conduit for the hearsay opinions of others. *State v. Williams*, 2002 WI 58, ¶ 19, 253 Wis. 2d 99, 644 N.W.2d 919. In *Williams*, the supreme court relied upon *United States v. Lawson*, 653 F.2d 299 (7th Cir. 1981), to reach this conclusion. In *Lawson*, the challenge was that the admission of hearsay in the testimony of an examining psychiatrist violated Lawson's right to confront the witnesses against him. *Id.* at 301. The examining psychiatrist testified that he never interviewed Lawson privately but reached his opinion by relying upon reports and material he received from two treating physicians, other staff at the hospital and other sources. *Id.* The Seventh Circuit agreed with Lawson that "the introduction of expert testimony based in large part on hearsay may raise serious constitutional problems if there is no adequate opportunity to cross-examine the witness." *Id.*

> An expert's testimony that was based entirely on hearsay reports, while it might satisfy Rule 703, would nevertheless violate a defendant's constitutional right to confront adverse witnesses. The Government could `not, for example, simply produce a witness who did nothing but summarize out-of-court statements made by others. A criminal defendant is guaranteed the right to an effective cross-examination.

*Id.* at 302 (footnote omitted). The court also noted that the right of confrontation might necessitate giving a defendant the opportunity to cross-examine the person or persons who prepared the underlying data on which the expert relied. *Id.* at 302 n.8.[5]

¶ 10. Therese argues that in permitting Dr. Braam to testify to his opinion, which was not based upon personal knowledge coming from an interview with her but was based on the reports of two other professionals, she was denied the opportunity to cross-examine the actual authors of Dr. Braam's opinion. Because this is a civil proceeding there is no independent right to confront and cross-examine expert witnesses under the state and federal constitutions. *See W.J.C. v. Vilas County*, 124 Wis. 2d 238, 240, 369 N.W.2d 162 (Ct. App. 1985). The issue Therese presents is essentially a challenge to the procedures used to appoint a guardian and protectively place an individual. These procedures must conform to the essentials of due process. WIS. STAT. § 880.33(2).[6]

---

[5] The same result was reached in *State v. Towne*, 453 A.2d 1133 (Vt. 1982), where the testifying expert consulted with the author of a book he had relied upon and told the jury the author agreed with his diagnosis. *Id.* at 1134. In reversing Towne's conviction, the Vermont Supreme Court held that it was a violation of the hearsay rule to use one expert to introduce the opinions of nontestifying experts. *Id.* at 1135. The court also determined that the expert's recitation of the nontestifying doctor's opinion violated Towne's right of confrontation because Towne was prevented from cross-examining and exploring the qualifications of the nontestifying expert. *Id.* at 1136.

[6] The due process requirements for the appointment of a guardian also apply to proceedings to protectively place an individual. WIS. STAT. § 55.06(6).

¶ 11. In *W.J.C.* we held that the approach used in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to analyze a due process claim was appropriate when considering a procedural due process claim brought under the state's mental commitment law. *W.J.C.*, 124 Wis. 2d at 240. We now hold that the same approach should be used when assessing procedural due process claims brought under the guardianship and protective placement laws of this state. The *Mathews* test "involves balancing three factors: 1) The private interest affected by the official action, 2) the risk of erroneous deprivation of the interest through the procedures used and the probable value of additional or substitute procedural safeguards, and 3) the government's interest." *W.J.C.*, 124 Wis. 2d at 240.

¶ 12. Therese has a huge liberty interest at stake because "[p]rotective placements . . . are the only involuntary commitments under Wisconsin law that are indefinite in duration and thereby are tantamount to a life sentence to a nursing home or other custodial setting." *State ex rel. Watts v. Combined Cmty. Servs. Bd.*, 122 Wis. 2d 65, 76–77, 362 N.W.2d 104 (1985). In *Watts*, the supreme court quoted with approval from *Vitek v. Jones*, 445 U.S. 480, 492 (1980) (citation omitted):

> The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement. It is indisputable that commitment to a mental hospital "can engender adverse social consequences to the individual" and that "[w]hether we label this phenomena 'stigma' or choose to call it something else . . . we recognize that it can occur and that it can have a very significant impact on the individual."

¶ 13. The use of an expert witness, who has not personally examined the individual, as a conduit for the opinions of other examining professionals poses a substantial risk that Therese will be erroneously deprived of her liberty. Whether or not a guardian will be appointed and Therese protectively placed requires the government to prove by clear and convincing evidence that she is suffering from a mental disease or disability, that such condition is permanent, that she is substantially incapable of providing for her own care, and that she has a need for residential care and custody. *See* WIS JI—CIVIL 7060. To meet this burden of proof the government must present a witness who is qualified by experience, training and independent knowledge of Therese's mental health to give a medical or psychological opinion on each of these elements. *R.S.*, 162 Wis. 2d at 210 n.10. If the professional appointed to examine Therese relies only upon the opinions of those who have previously examined her, she is denied the opportunity to use cross-examination to discover the truth;[7] she is unable to adequately probe the professional's qualifications, the facts underlying the opinion and the method undertaken to reach the opinion. The finder of fact will be without the original evidence it needs to decide whether the government met its burden of proof.

¶ 14. The probable value of requiring the testimony of a professional who has an opinion based upon more than the opinion of others is sizeable. The court appoints a professional it has trust in to examine the proposed ward, *see* WIS. STAT. § 880.33(1); the court, the

---

[7] Cross-examination has been described as the "greatest legal engine ever invented for the discovery of truth." *Vogel v. State*, 96 Wis. 2d 372, 388, 291 N.W.2d 838 (1980) (citation omitted).

finder of fact and the proposed ward expect that the report of the professional will be based upon firsthand knowledge and not what other professionals have concluded.

¶ 15. The government has several interests at stake. It is interested in the finder of fact correctly finding the facts. It is interested in providing services to "any citizen of the state, suffering from the infirmities of aging, chronic mental illness, mental retardation, other developmental disabilities or like incapacities incurred at any age," and to provide those services in a manner that places "the least possible restriction on personal liberty and exercise of constitutional rights consistent with due process and protection from abuse, exploitation and neglect." WIS. STAT. § 55.001. It is impossible to determine the government's interest in additional fiscal or administrative burdens that might be entailed by requiring the testimony of a professional who has examined the proposed ward.

¶ 16. Our balancing of the *Mathews* factors leads us to conclude that permitting an examining professional to be nothing more than a conduit for the opinions of others would violate a proposed ward's due process rights. In a guardianship and protective placement proceeding, the finder of fact might make a decision that will result in a life sentence to a nursing home. *See Watts*, 122 Wis. 2d at 76–77. That decision is essentially a medical question that turns on the meaning of facts interpreted by expert psychiatrists and psychologists. *Parham v. J.R.*, 442 U.S. 584, 609 (1979). Therefore, it is crucial that the examining professional reach his or her conclusion through an independent evaluation of the proposed ward and not through a review of the opinions of other expert psychiatrists and psychologists.

¶ 17. This is not to say that the proposed ward's rightful refusal to participate in the court-ordered evaluation will obstruct a guardianship and protective placement proceeding. When the proposed ward has refused to cooperate, the examining professional is still free to review all of the records that are available in reaching his or her opinion. It is well settled that an expert may rely upon reports and information provided by others: "[I]t is proper for a physician to make a diagnosis based in part upon medical evidence of which he has no personal knowledge but which he gleaned from the reports of others." *Vinicky v. Midland Mut. Cas. Ins. Co.*, 35 Wis. 2d 246, 254, 151 N.W.2d 77 (1967). An expert is permitted to base an opinion on hearsay if it is of a type customarily relied upon in that field in forming opinions. In the medical field, the evidence contained in treatment records is routinely relied upon by physicians to treat a patient; if it is deemed trustworthy enough to support treatment decisions, it is trustworthy enough to support a professional opinion. *Id.* at 254–55.

¶ 18. Due process requires that the examining professional, when confronted with an uncooperative individual, engage in an independent review of all of the records that are available. Due process prevents the examining professional from regurgitating the opinions of other physicians and psychologists, without independently confirming the facts those opinions are based upon.

¶ 19. Our review of the record satisfies us that Dr. Braam was not simply a conduit for the opinions of other professionals who had previously examined Therese. Although he did review the reports prepared

by Drs. Loiben and Thompson, he also reviewed an affidavit in support of a 2001 petition for the involuntary commitment of Therese, prepared by her treating psychiatrist, along with medical records from St. Luke's Medical Center, Holton Manor Nursing Home, and the County's Department of Health and Human Services. Dr. Braam testified that these records are the types of records he normally relies upon when rendering a professional opinion on whether a proposed ward is in need of guardianship.

¶ 20. While Therese refused to participate in an initial interview with Dr. Braam, she did speak with him when he visited her in preparation for the evidentiary hearing. He testified that the information he gained from the recent visit with Therese cemented his opinion that she had schizophrenia, paranoid type. The record establishes that in stating his professional opinion, Dr. Braam was not regurgitating the opinions of other professionals; he was stating an independent opinion based upon the medical observations and findings of others, as well as his own observations and findings, information which he normally relies upon in his daily practice. *See State ex rel. T.R.S. v. L.F.E.*, 125 Wis. 2d 399, 402, 373 N.W.2d 55 (Ct. App. 1985). We conclude that the testimony of Dr. Braam did not violate Therese's procedural due process right to cross-examine the court-appointed expert because he had an independent professional opinion and was not simply a conduit for the opinions of others.

## B. Sufficiency of the Evidence

¶ 21. Therese also argues that even if Dr. Braam's report and testimony are admissible, the evidence is insufficient to support the conclusion that she is incom-

petent within the meaning of Wis. Stat. § 880.01(4) and requires protective placement under Wis. Stat. § 55.06. A discussion of the standard of review we apply is in *Coston v. Joseph P.*, 222 Wis. 2d 1, 22–23, 586 N.W.2d 52 (Ct. App. 1998) (citation omitted):

> The circuit court's factual findings will not be overturned unless clearly erroneous. *See* § 805.17(2) Stats. The issues of whether the evidence satisfies the legal standard for incompetency and whether the evidence supports protective placement are questions of law, which we review *de novo*. At a hearing on a petition for guardianship, the petitioner bears the burden of proving, by clear and convincing evidence, that the proposed ward is incompetent.

## 1. Incompetence

¶ 22. An incompetent is defined in Wis. Stat. § 880.01(4), as "a person adjudged by a court of record to be substantially incapable of managing his or her property or caring for himself or herself by reason of infirmities of aging, developmental disabilities, or other like incapacities. Physical disability without mental incapacity is not sufficient to establish incompetence." There are two elements to incompetency: an incapacity to care for oneself and the condition producing the incapacity is a mental disability. *R.S.*, 162 Wis. 2d at 203.

¶ 23. The circuit court found that Therese was incompetent due to "[o]ther like incapacities," defined in Wis. Stat. § 880.01(8) as "those conditions incurred at any age which are the result of accident, organic brain damage, mental or physical disability, continued consumption or absorption of substances, producing a condition which substantially impairs an individual from providing for the individual's own care or custody."

327

In reaching this finding the circuit court found that Therese's desire to terminate her social security and medical assistance and disconnect her pacemaker establish that she is delusional. Although the circuit court was unsure whether Therese had schizophrenia, it was satisfied that she had "other like incapacities" that prevent her from caring for herself.

¶ 24. The record supports the circuit court's findings that Therese is delusional. Dr. Braam testified that during his most recent visit with Therese she provided him information that reinforced his conclusion that she had schizophrenia. He testified that she believes "she has been or is being poisoned, that she has been inappropriately treated and diagnosed." He stated that Therese "explained to me that she did not wish to receive her Social Security benefits because she believed that the diagnosis of schizophrenia was inaccurate, illegal and fraudulent and that she believed that accepting Social Security funds based on that diagnosis was inappropriate for her to do." He related that Therese has written to her cardiologist requesting that he disconnect her pacemaker. He also offered the opinion that her delusional thought process interfered with her ability to make decisions for herself.

¶ 25. Therese submitted the testimony of Dr. Rubin, who had examined her on behalf of the State of Wisconsin to determine if she met the federal criteria for mental illness. He testified that in his professional opinion, Therese did not have schizophrenia, paranoid type, and, while she did have delusions, those delusions were not consistent with schizophrenia because her high blood sugars and Graves' Disease were alternative and reasonable explanations for her thought process. He opined that Therese has demonstrated that she has the capability of caring for herself because of her

compulsion to set the record straight she is better off than if she had acquiesced to treatment.

¶ 26. The circuit court was presented with a classic battle of the experts; it had to consider diametrically opposing opinions from two highly qualified professionals. As the finder of fact, the circuit court "was free to weigh the experts' testimony when it conflicted and decide which was more reliable; to accept or reject the testimony of any expert, including accepting only parts of an expert's testimony; and to consider all of the non-expert testimony in deciding whether" Therese was incompetent. *See State v. Kienitz*, 227 Wis. 2d 423, 441, 597 N.W.2d 712 (1999) (citation omitted). In this case, the circuit court, by making findings of fact paralleling Dr. Braam's testimony, implicitly assigned greater credibility and weight to his testimony; as an error-correcting court, we must defer to this assessment of the credibility of the experts and the weight of the testimony.

¶ 27. Given that the circuit court's findings of historical facts are supported in the record, we will now apply them to the definition of "incompetence" in Wis. Stat. § 880.01(4). We determine that as a matter of law Therese is incapable of making and carrying out rational decisions about her own medical and physical care—functional incapacity, *R.S.*, 162 Wis. 2d at 203—because she has a mental illness that is manifested in a bizarre delusional thought process—mental disability. *Id.*[8]

---

[8] We note that neither the definition of "incompetent" nor "other like incapacities" requires that a name—e.g., schizophrenia or bipolar disorder—be given to the mental disability that interferes with the individual's ability to care for himself or

## 2. Protective Placement

██

¶ 28. Before a circuit court can order the protective placement of a mentally ill individual, it must find:

1. That the individual to be placed is incompetent;

2. That the individual has a primary need for residential care and custody;

3. That, as a result of mental illness, the individual is so incapable of providing for his or her own care or custody that the condition creates a substantial risk of serious harm to the individual or others;

4. That the individual's disability is permanent or likely to be permanent.

*K.N.K. v. Buhler*, 139 Wis. 2d 190, 197, 407 N.W.2d 281 (Ct. App. 1987).

¶ 29. Therese argues that the circuit court's ordering of protective placement is not supported by the record. Specifically, she contends that the evidence supports the conclusion that she could live independently as long as she received protective services, such as the assistance of a visiting nurse. She faults the court for failing to articulate why protective placement is needed to meet her medical needs.

¶ 30. Because we have already found that Therese has a functional incapacity caused by a mental disability, we will focus our attention on her position that her condition does not create a substantial risk of serious harm to herself and she does not require residential

---

herself. The statute is not concerned with the medical title for the mental disability; rather, it is concerned with how the disability affects the individual's ability to function.

care and treatment. The circuit court made thorough findings of fact, including that Therese's desire to terminate her benefits will result in her being discharged from the nursing home she is in and that she has no alternative living arrangements. The court found that her desire to disconnect her pacemaker could result in her imminent death. The court also found that she was in need of residential care and treatment because the "chronicity of her illnesses" makes it imperative that she receive twenty-four hour nursing care.[9]

¶ 31. The record contains credible and substantial evidence to support the circuit court's findings of fact. It is not necessary for us to repeat the testimony of Dr. Braam that supports the circuit court's findings of fact. In addition to the testimony of Dr. Braam, there is the comprehensive evaluation and testimony of social worker Cheryle Gasch. She testified that Therese "has impairment with decision making, planning, goals, follow through, that in addition to her complicated list of medical problems interferes with her ability to take care of herself." She also testified as to why residential care and placement are necessary to monitor and deal with Therese's multiple medical diagnoses.

¶ 32. We conclude that Therese's current mental and physical conditions warrant residential care and treatment because without it there is a substantial risk of harm to her. It is evident that her mental disability, accompanied by her bizarre delusional thought process,

---

[9] The comprehensive evaluation prepared by a social worker lists thirty-five medical diagnoses for Therese, from "Rehabilitation Therapy Secondary to Acute Renal Failure" to "Remote History of Alcohol Abuse" and including congestive heart failure and Graves' Disease.

prevents her from monitoring and managing her multiple medical diagnoses. Therese's delusions have placed her in danger as demonstrated by her desire to disconnect her pacemaker and terminate her social security benefits and medical assistance. We hold that she is in need of protective placement under WIS. STAT. § 55.06.

*By the Court.*—Order affirmed.