COURT OF APPEALS
DECISION
DATED AND FILED

July 7, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP197**

Cir. Ct. No. 2018GN78

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

---

IN RE THE MATTER OF R. B.,

J. W.,

    PETITIONER-RESPONDENT,

  V.

R. B.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Marathon County: MICHAEL K. MORAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Randall[1] appeals an order appointing a guardian of both his estate and person, and an order directing his protective placement in an unlocked unit of a nursing home or an assisted living facility.   Randall challenges the sufficiency of the evidence to support the orders.   We reject his arguments and affirm.

## BACKGROUND

¶2     Randall's   granddaughter,   Jennifer,   filed   petitions   seeking guardianship and protective placement of Randall.   The petitions were supported by a psychologist's report recounting that eighty-seven-year-old Randall, who has a documented history of dementia, was admitted to the hospital after brandishing a firearm in the course of an argument with his wife.   The guardian ad litem submitted a report recommending that the circuit court appoint a guardian of Randall's person and estate, and protectively place Randall in an assisted living facility.   The court entered an order appointing Randall's son and daughter as temporary co-guardians of his estate, and Randall's granddaughters as temporary co-guardians of his person.

¶3     An examining psychologist, Michael Galli, Ph.D., subsequently filed a report opining that Randall suffers from a degenerative brain disorder—namely, "dementia, likely the Alzheimer's type"—and that his incapacity is permanent. Doctor Galli noted that Randall is prescribed psychotropic medications, though Randall claimed he "threw his meds away," because he did not think the people giving   him   the   medications   knew   what   they   were   doing.    Although   Randall

---

[1] Pursuant to WIS. STAT. RULE 809.81(8), we use pseudonyms when referring to the subject individual and any family members in this confidential matter.

reported to Dr. Galli that he had "no problems" and did "not need or want a guardian," Dr. Galli opined that Randall's impairment resulted in specified incapacities, necessitating protective placement with twenty-four-hour supervision and the appointment of a guardian. After a bench trial, the circuit court ordered Randall's guardianship and protective placement. This appeal follows.

## DISCUSSION

¶4    Decisions on guardianship and protective placement are within the sound discretion of the circuit court. *Anna S. v. Diana M.*, 2004 WI App 45, ¶7, 270 Wis. 2d 411, 678 N.W.2d 285. In reviewing these decisions, we will not disturb a circuit court's factual findings unless those findings are clearly erroneous. *See* WIS. STAT. § 805.01(2) (2017-18)[2]; *Robin K. v. Lamanda M.*, 2006 WI 68, ¶12, 291 Wis. 2d 333, 718 N.W.2d 38; *Walworth Cty. v. Therese B.*, 2003 WI App 223, ¶21, 267 Wis. 2d 310, 671 N.W.2d 377. Whether the evidence satisfies the applicable legal standards is a question of law that we review de novo. *Therese B.*, 267 Wis. 2d 310, ¶21.

¶5    The criteria for a guardianship are set forth in WIS. STAT. § 54.10(3)(a). The individual must be at least seventeen years and nine months old. For purposes of guardianship of the person, because of an impairment, the individual must be unable to effectively receive and evaluate information or to make or communicate decisions to such an extent that the individual is unable to meet the essential requirements for his or her physical health and safety. For purposes of guardianship of the estate, because of an impairment, the individual

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise stated.

must be unable to effectively receive and evaluate information or to make or communicate decisions related to the management of his or her property or financial affairs if the individual has property that will be dissipated in whole or in part, the individual is unable to provide for his or her support, or the individual is unable to prevent financial exploitation. Finally, the individual's need for assistance in decision making or communication will not be met effectively and less restrictively through appropriate and reasonably available training, education, support services, health care, assistive devices, or other means that the individual will accept.

¶6 In turn, protective placement is appropriate when: (1) the individual has a primary need for residential care and custody; (2) the individual is an adult who has been determined to be incompetent by a circuit court; (3) as a result of a developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself as evidenced by overt acts or omissions; and (4) the disability is permanent or likely to be permanent. WIS. STAT. § 55.08(1). These elements must be proved by clear and convincing evidence. WIS. STAT. § 55.10(4)(d).

¶7 Randall does not dispute the age element of guardianship, nor does he dispute that he suffers from an impairment—dementia. However, Randall contends there were no details presented at trial to support the other essential criteria for either guardianship of his person and estate, or his protective placement. We disagree.

¶8   At trial, Dr. Galli testified, consistent with his report, that Randall suffered from "Alzheimer's dementia," describing it as a condition that "significantly impair[s] a person's ability to do a variety of things including taking care of themselves." Doctor Galli opined that Randall's impairment impacted his reasoning ability, and he offered the following examples based on his observations:

> [Randall] wasn't sure how long it was he had been at the facility where I saw him. He didn't know why it was that he had been placed there. He wasn't sure who made that decision or what the reasons were for that. He had some hunches about who was responsible but said he didn't know for sure.
>
> He did not think he was in need of any medication. He thought he was given medications on a daily basis but he said he threw all of them in the trash, into the toilet, because he wasn't sure if the people who were giving him those meds knew what they were doing.

¶9   Doctor Galli further opined that Randall did not have an understanding of the nature and consequences of his dementia-induced impairment, and that his incapacity interfered with his ability to: (1) receive and evaluate information; (2) make decisions; (3) protect himself from exploitation and abuse; (4) meet his essential health and safety needs; (5) manage his finances; (6) provide for his own support; (7) prevent financial exploitation; (8) independently manage or meet his health care and medical needs; and (9) meet his daily care needs independently. Doctor Galli clarified that Randall's incapacity was due to dementia rather than old age, poor judgment, physical disability or eccentricities. Doctor Galli further testified that there are no medications to reverse the course of dementia, and that "[i]ndividuals with this level of dementia are primarily in need of structure and supervision so that they do

not get themselves into any kind of distress because of their inability to assess their needs."

¶10   Based on his evaluation of Randall, including a review of Randall's care center medical chart and conversations with staff members involved in Randall's daily care, Dr. Galli ultimately opined, to a reasonable degree of psychological knowledge or expertise, that Randall is incapable of exercising basic rights, with the exception of his voting rights, without guardian approval. Doctor Galli further opined that Randall required control or supervision by others to assist him with his personal care, his health and medical needs, and with his safety. Doctor Galli also opined that Randall posed a risk of substantial harm to himself or others if he did not have the supervision and support provided by protective placement in an unlocked facility.

¶11   Randall testified that he had "no desire" for protective placement and he deemed the idea that he might hurt somebody or something to be "ridiculous." When asked whether he takes his medications as directed, Randall responded that, with the exception of his heart medication and eye drops, he tossed his medicines "in the garbage most of the time." Randall insisted he was capable of taking care of his needs and those of his wife, "including around the house." Randall testified that he has "always had a little memory difficulty," but he asserted that he kept track of important things.

¶12   When asked if he remembered "2018, July 3rd, 2018,"—the day Randall was admitted to the hospital, Randall responded: "Didn't we invade Japan on one of these dates? I don't know. Is it supposed to be significant otherwise?" When asked to explain why he was admitted to the hospital, Randall described an incident involving a gun he kept in his home:

> [M]y wife and I were discussing some private things that happened in the past and she mentioned something about you might want to take this gun and—which I kept in the closet, and do me in, and we wrestled for that gun, and instead of my taking it down in the sewer and throwing it in a manhole that we have in the basement, I took it outside to get it away from her.

¶13 For purposes of guardianship of Randall's person, the circuit court found that Randall had an impairment due to a degenerative brain disease rendering him unable to effectively receive and evaluate information or to make or communicate decisions to such an extent that he could not meet the essential requirements for his physical safety and health. The court expressed concern about Randall's admission to throwing away his medications, noting that it suggested Randall was either not listening to his doctor's recommendations, or he did not have "insight into [his] personal situation."

¶14 With respect to the guardianship of Randall's estate, the circuit court found that Randall was unable to effectively receive and evaluate information or to make decisions related to management of his property or financial affairs, and because of Randall's lack of insight and issues of judgment and memory loss, there was a substantial risk Randall could be exploited financially. The court further found that Randall was in need of assistance in decision making and that his needs in that respect could not be met effectively and less restrictively through other appropriate means. The court also expressed concern with respect to Randall's access to firearms.

¶15 Turning to the petition for protective placement, the circuit court found Randall incompetent. The court further found that as a result of the progression of Randall's permanent disability, he has a primary need for residential care and custody. Using evidence of the situation involving the gun,

7

the court additionally found Randall incapable of providing for his own care and custody, thus creating a substantial risk of serious harm to himself or others.

¶16    On appeal, Randall does not appear to dispute that Dr. Galli's testimony technically satisfied the elements for guardianship and protective placement.  Rather, he claims that Jennifer could not rely solely on Dr. Galli's opinions because Dr. Galli provided only conclusory, "one-word," testimony.  We understand this to mean that Randall claims Dr. Galli testified using only "yes" or "no" answers to questions.  Randall concedes, however, that he cannot identify any authority to support his claim that Jennifer was required to present specific examples of Randall's behavior in order to prove each element.

¶17    For Jennifer to meet her burden of proof as to guardianship, she was required to present a witness "who is qualified by experience, training and independent knowledge of [Randall]'s mental health to give a medical or psychological opinion."  *See Therese B.*, 267 Wis. 2d 310, ¶13.  Randall does not challenge Dr. Galli's qualification to render opinions on these matters.  Ultimately, Randall ignores our standard of review and asks us to reweigh the evidence.  We do not reweigh evidence or reassess witness credibility—rather, we will search the record for evidence that supports findings the circuit court made, not for findings it could have made but did not.  *See Noble v. Noble*, 2005 WI App 227, ¶¶15-16, 287 Wis. 2d 699, 706 N.W.2d 166.  We conclude the record fully supports the circuit court's findings regarding the need for a guardian of Randall's person and estate, as well as the need for protective placement.

        *By the Court*.—Orders affirmed.

        This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

8