COURT OF APPEALS
DECISION
DATED AND FILED

August 19, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1754**

Cir. Ct. No. 2020GN4

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN THE MATTER OF THE CONDITION OF L.W.:

DODGE COUNTY HEALTH AND HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

L. W.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Dodge County: BRIAN A. PFITZINGER, Judge. *Affirmed.*

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. L.W. appeals orders for guardianship and protective placement. We affirm.[1]

¶2    We begin by reciting the applicable legal standards for guardianship of the person. A circuit court may appoint a guardian if the petitioner proves by clear and convincing evidence that the person, "because of an impairment, … is unable effectively to receive and evaluate information or to make or communicate decisions to such an extent that the individual is unable to meet the essential requirements for his or her physical health and safety." WIS. STAT. § 54.10(3)(a)2.

¶3    Two important terms in that provision are defined. As relevant to this case, "impairment" is defined as a "serious and persistent mental illness." WIS. STAT. § 54.01(14). In addition, "[m]eet the essential requirements for physical health or safety" means to "perform those actions necessary to provide the health care, food, shelter, clothes, personal hygiene, and other care without which serious physical injury or illness will likely occur." Sec. 54.01(19).

¶4    L.W. also relies in part on a further provision: "Unless the proposed ward is unable to communicate decisions effectively in any way, the determination" to appoint a guardian under WIS. STAT. § 54.10(3)(a) "may not be based on mere old age, eccentricity, poor judgment, physical disability, or the existence of a supported decision-making agreement." Sec. 54.10(3)(b).

---

[1] This appeal is decided by a three-judge panel because, when a case involves both guardianship under WIS. STAT. ch. 54 (2019-20) and protective placement under WIS. STAT. ch. 55 (2019-20), it is decided by a three-judge appeal. *Waukesha Cnty. v. Genevieve M.*, 2009 WI App 173, ¶5, 322 Wis. 2d 131, 776 N.W.2d 640 (per curiam).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶5      The applicable standard of review is mixed. We do not overturn the circuit court's factual findings unless they are clearly erroneous, but the issue of whether the evidence satisfies the legal standards for guardianship and protective placement are questions of law. *Walworth Cnty. v. Therese B.*, 2003 WI App 223, ¶21, 267 Wis. 2d 310, 671 N.W.2d 377. The circuit court's weighing of conflicting expert opinions is a finding of fact to which we defer. *Id.*, ¶26.

¶6      Here, the circuit court found that L.W. is unable to effectively receive and evaluate information. L.W. asserts that inability to effectively receive and evaluate information is a legal conclusion that the court erred in making, and not a finding of fact to which we defer unless it is clearly erroneous. She cites no authority for that proposition, and we disagree with it. The question is one of causation, specifically, whether the person's impairment causes an inability to effectively receive and evaluate information. As applied in this case, we regard the effects of L.W.'s mental illnesses on her mental process as a factual question. This is consistent with *Therese B. See id.*, ¶¶21, 23-24. Further, even if this were a legal conclusion, the result of this appeal would be the same.

¶7      Two experts submitted reports and testified to differing opinions, one in support of the petition and one not. L.W. argues that the circuit court's finding that she was unable to effectively receive and evaluate information was erroneous due to flaws in the testimony of the expert whose opinion supported the petition.

¶8      In L.W.'s view, the flaw in this expert's opinion is that he employed a faulty premise that bad decisions on L.W.'s part are sufficient to show that she was unable to effectively receive and evaluate information. This premise is flawed, she argues, because poor judgment and bad outcomes are not, by

themselves, a basis for guardianship. She argues that there was no testimony that her types of mental illnesses necessarily impact a person's understanding or decision-making.

¶9 L.W.'s focus on the testimony of this expert fails to acknowledge the expert's written report. When we look at the hearing testimony alone, L.W.'s description of the testimony is at least partially accurate. There is no testimony about her specific mental illnesses, how they affect her behavior, or how they cause her to be unable to effectively receive and evaluate information. There is only a generic statement, repeating the legal standard, that she has serious and persistent mental illness. But no specific illness is identified or described.

¶10 However, the expert's written report, which was received in evidence, provides more information, and we quote it at length:

> She is diagnosed with major depression by history, an adjustment disorder with a major personality disorder, history of schizoaffective disorder, history of cannabis use disorder but living in a restrictive environment, and developmental coordination disorder. This is characterized by poor judgement, lack of insight, impaired reasoning and planning….
>
> As a result of this disorder she has impairments. She lacks the evaluative capacity to communicate and make decisions. In the area of person, she is not able to provide medical care for herself, seek medical care, allow medical treatment, handle her catheter, clean herself and living area with her bowel and urine problem. She cannot shop for groceries and other items. She refuses any supportive care. She believes that she can live entirely by herself but, then, admits that she cannot do the necessary actions to support herself…. She cannot find shelter which will accommodate her incontinence difficulties. She is a health and safety risk to herself due to infections. She cannot adapt to an emergency without assistance.

¶11    It is clear from this report that the expert did not, as L.W. argues, employ a premise that bad decisions on L.W.'s part are sufficient to show that she was unable to effectively receive and evaluate information. Instead, the expert described the effects of her mental illnesses, and opined that they cause her to lack the "evaluative capacity" to make decisions.

¶12    L.W. also argues that the expert relied on his subjective belief as to what choices she should make, and applied a standard under which a person is competent only if she makes decisions that seem rational to others and that have good outcomes. L.W. asserts that many adults make decisions that would fail this standard by smoking, drinking alcohol and taking illegal drugs, or not taking vaccinations and other medical care.

¶13    We disagree with this argument. The expert used the proper measure, which is embedded in the statute: whether the person is unable to meet the essential requirements for his or her physical health and safety, which means being unable to "perform those actions necessary to provide the health care, food, shelter, clothes, personal hygiene, and other care without which serious physical injury or illness will likely occur." WIS. STAT. § 54.01(19).

¶14    This definition establishes that the types of decisions by others that L.W. refers to would not be a basis for guardianship under this provision. For example, smoking may, in the long run, cause serious illness, but it does not do so by making the person unable to obtain health care, food, shelter, clothes, personal hygiene, or other care. For a guardianship to be appropriate, those are the effects that the person's impairment must cause. The statute does not, as L.W. suggests, encompass *all* decisions that may lead to serious injury or illness, and that is what

makes L.W.'s situation substantively different from the types of decisions that she attempts to equate her situation to.

¶15    To the extent that L.W. is arguing that the expert's conclusion was contrary to the paragraph which provides that a guardianship generally may not be based on "poor judgment," *see* WIS. STAT. § 54.10(3)(b), that paragraph does not mean that evidence of poor judgment cannot be considered *at all* in any stage of applying the statutory standard.  Instead, a court may consider whether poor judgment that has been shown was the product of an impairment, such as serious and persistent mental illness.  If it is not, then this paragraph clarifies that mere poor judgment not caused by an impairment is not a basis for guardianship. However, here, as we quoted above, the expert regarded poor judgment as a feature of L.W.'s mental illnesses.  Thus, it is appropriate to consider the ways in which that poor judgment makes her unable to meet her needs.

¶16    L.W. asserts that the circuit court erred by basing its decision in part on the court's difficulty in understanding L.W.'s motivations to make decisions that have bad outcomes.  However, motivation is a proper consideration.   In indicating that L.W.'s motivation for making decisions with bad outcomes is difficult to understand, the court was reasonably implying that the decisions were coming from a source other than rational motivation, namely, mental illness.

¶17    L.W. argues that the circuit court "took a paternalistic approach" in which it found her incompetent because a guardian could make better decisions about her health than she can.  As we have discussed, the court's decision was based on more than just the quality and outcomes of her decisions.  Instead, the court found that they were the product of serious and persistent mental illness.

¶18 Finally, L.W. also relies on the opinions of the expert who did not support the petition. However, in reviewing findings of fact, we do not search for evidence that supports findings the court did not make. *See **Dickman v. Vollmer***, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202. It was, as we have stated, up to the circuit court to weigh the conflicting expert opinions.

¶19 L.W. also argues that the court erred by ordering a guardian of the estate. For guardianship of the estate, as relevant to this case, the standard is whether L.W.'s mental illnesses caused her to be unable to effectively receive and evaluate information related to the management of her property or financial affairs to the extent that: (1) her property will be dissipated in whole or part; (2) she is unable to provide for her support; or, (3) she is unable to prevent financial exploitation. WIS. STAT. § 54.10(3)(a)3.

¶20 L.W. argues that the County failed to prove any of these three possible outcomes. The circuit court's oral decision did not discuss these points. The court's written form order includes a check box that the court uses to indicate that the person meets one of these standards, but without indicating which standard is met.

¶21 L.W. asserts that the County did not introduce any evidence that she was without support or that her bills went unpaid at any time. This is inaccurate. It omits the history, which she does not factually dispute, of her spending her income for non-essential items, while allowing her electricity to be shut off for nonpayment. In addition, L.W. fails to acknowledge the events that led her, on November 7, 2019, to be staying at a hotel, with no more money for the remainder of the month for shelter, food, or other essentials. These facts satisfy the legal standard of being unable to provide for her support.

¶22 L.W. argues that the fact that she chooses to spend money on non-essential items does not prove that she is unable to receive and evaluate information. This argument is similar to one we rejected above regarding guardianship of the person, and we reject this one for the same reason: the relevant finding was based on more than simply the fact that her choices led to bad outcomes.

¶23 L.W. also argues that the order for protective placement should be reversed. She argues that the circuit court failed to make the required finding that she is "totally incapable" of providing for her own care or custody, creating a substantial risk of serious harm to herself or others. *See* WIS. STAT. § 55.08(1)(c). While it is true that the court's oral ruling did not directly address this point, other than saying that "there is a need for" protective placement, the written check box form order includes this finding.

¶24 L.W. argues that the finding was clearly erroneous because she is not "totally incapable" of providing for her own care, and that the evidence instead shows that she is capable of accessing medical or other services when necessary. We reject this argument because the record amply demonstrates that her attempts to access services have occurred mainly *after* she has already placed herself at substantial risk of serious harm through her conduct.

¶25 L.W. also argues that the court's decision disregards the distinction between refusing care and being incapable of providing for one's care. However, when as here the circuit court has a reasonable basis to find that the person's refusal was the product of mental illness, there is no meaningful distinction.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.