COURT OF APPEALS
DECISION
DATED AND FILED

**January 16, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP1305-FT**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016GN47

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE GUARDIANSHIP AND PROTECTIVE PLACEMENT OF H.K.B.:

MONROE COUNTY,

   PETITIONER-RESPONDENT,

 V.

H.K.B.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Monroe County: RICHARD A. RADCLIFFE, Judge. *Reversed*.

¶1      NASHOLD, J.[1]   H.K.B. has been in protective placement in an adult family home since February 2022.   Orders for the continuation of H.K.B.'s protective placement were issued in April 2023 and March 2024.   H.K.B. appeals the most recent of these orders, and argues that there was insufficient evidence that she continued to meet the standards for protective placement under WIS. STAT. § 55.08(1).   I agree and therefore reverse.[2]

## BACKGROUND

¶2      To provide context for the relevant facts, I first discuss briefly the pertinent standards and procedures governing protective placements under WIS. STAT. ch. 55.

¶3      A protective placement is "'a massive curtailment of liberty.'"  ***State ex rel. Watts v. Combined Cmty. Servs. Bd. of Milwaukee Cnty.***, 122 Wis. 2d 65, 80, 362 N.W.2d 104 (1985) (quoting ***Vitek v. Jones***, 445 U.S. 480, 491-92 (1980); *see also **id.*** at 76-77 ("Protective placements … are the only involuntary commitments under Wisconsin law that are indefinite in duration and thereby are tantamount to a life sentence to a nursing home or other custodial setting.").

¶4      To order that an individual be protectively placed, a court must find that the individual meets all of the following standards:

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

[2] H.K.B. also argues that the circuit court did not make adequate findings to support a continuation of H.K.B.'s protective placement.  Because I reverse on other grounds, I need not address this issue.  ***Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

(a) The individual has a primary need for residential care and custody.

(b) The individual is a minor who is not alleged to have a developmental disability and on whose behalf a petition for guardianship has been submitted, or is an adult who has been determined to be incompetent by a circuit court.

(c) As a result of developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others. Serious harm may be evidenced by overt acts or acts of omission.

(d) The individual has a disability that is permanent or likely to be permanent.

WIS. STAT. § 55.08(1). That the individual meets these standards must be shown by clear and convincing evidence. WIS. STAT. § 55.10(4)(d).

¶5 Protective placements are subject to annual review pursuant to WIS. STAT. § 55.18. *See also Watts*, 122 Wis. 2d 65 (concluding that a lack of periodic, automatic review of protective placements violates equal protection). When the individual contests the protective placement, a full due process hearing is required. Sec. 55.18(3)(d); *Watts*, 122 Wis. 2d at 85. To order the continuation of a protective placement, a circuit court must conclude, based on clear and convincing evidence, that the individual continues to meet the standards under WIS. STAT. § 55.08(1). WIS. STAT. §§ 55.18(3)(d), (e), 55.10(4)(d).

¶6 Turning to the facts of this case, H.K.B. has been subject to a guardianship of her estate since 2016, and she has been subject to a guardianship of her person since 2017. In 2021, Monroe County filed a petition for protective placement of H.K.B. pursuant to WIS. STAT. ch. 55. The petition was granted, and, as stated, H.K.B. has been in protective placement since February 2022.

¶7     After the County petitioned for the second annual review of H.K.B.'s protective placement, the circuit court held a due process hearing. At the hearing, the only testimony was from Dr. Stephen Paul Dal Cerro, a licensed clinical psychologist who evaluated H.K.B. before the hearing. Dal Cerro testified that H.K.B. has a mild intellectual disability, mixed anxiety and depressive disorder, and dependent personality disorder with borderline features, all of which Dal Cerro testified were permanent or likely to be permanent. Dal Cerro also testified that H.K.B. has a primary need for residential care and custody and that she has an incapacity that renders her so incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others. I further discuss Dal Cerro's testimony as relevant in the discussion that follows.

¶8     The circuit court ordered the continuation of H.K.B.'s protective placement. The court relied on Dal Cerro's testimony and stated, "for [the court] to terminate the protective placement, [the court] would have to make a finding that … either [Dal Cerro's] testimony was not credible or … that his testimony would support terminating the protective placement, and … I don't make that finding." The court additionally stated, "[Dal Cerro's] testimony is that … independently [H.K.B.] would have difficulty managing her affairs, controlling her impulses, and she lacks the skills necessary to be on her own."[3]

---

[3] Although the circuit court noted that Dal Cerro had provided a report based on his evaluation of H.K.B., the court did not state that it was relying on Dal Cerro's report, nor did the court refer to any information from the report in making its ruling.

**DISCUSSION**

¶9 H.K.B. argues that the County presented insufficient evidence at the hearing that H.K.B. continued to meet the standards for protective placement under WIS. STAT. § 55.08(1). Specifically, H.K.B. contends that the County presented insufficient evidence that H.K.B. continued to meet § 55.08(1)(c)'s dangerousness element by being so totally incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others.[4] I agree with H.K.B. and therefore reverse.

¶10 Whether the evidence supports continued protective placement is a question of law that is reviewed de novo. *See Walworth County v. Therese B.*, 2003 WI App 223, ¶21, 267 Wis. 2d 310, 671 N.W.2d 377.

¶11 As stated above, to satisfy the dangerousness element of WIS. STAT. § 55.08(1)(c), the County must show that,

> [a]s a result of developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others. Serious harm may be evidenced by overt acts or acts of omission.

Under § 55.08(1)(c), "[t]he risk of harm must be substantial. Mere speculation as to difficulties [an individual] may encounter is not sufficient. Specific harm must

---

[4] H.K.B. also argues that the County failed to provide sufficient evidence that H.K.B. continued to have a primary need for residential care and custody under WIS. STAT. § 55.08(1)(a). I need not address whether there was sufficient evidence to satisfy § 55.08(1)(a) because I conclude that there was insufficient evidence to satisfy § 55.08(1)(c), and because all of § 55.08(1)'s standards must be met for a continuation of protective placement. *See* WIS. STAT. §§ 55.18(3)(e)1., 55.08(1); *Barrows*, 352 Wis. 2d 436, ¶9.

be foreseeable to fulfill this requirement. Furthermore, the foreseeable harm must be serious…. [M]inor accidents, injuries and illness are not sufficient to satisfy this requirement." *Zander v. County of Eau Claire*, 87 Wis. 2d 503, 514-15, 275 N.W.2d 143 (Ct. App. 1979); *see also* *K.N.K. v. Buhler*, 139 Wis. 2d 190, 202, 407 N.W.2d 281 (Ct. App. 1987) ("The harm envisioned may not be based on mere speculation but must be directly foreseeable ….").

¶12 Here, as stated, the only testimony at the hearing was from Dal Cerro. Relevant to the element of dangerousness, Dal Cerro testified as follows on direct examination:

> Q And does [H.K.B.] have an incapacity that renders -- renders her so incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others?
>
> A She does.
>
> Q What's the risk for her?
>
> A The risk for her is that she's, first of all, not able to provide for her own needs or her own safety; and then she's also vulnerable to the influence of others which works against her best interest, and it's -- you know, a review of the history in her case indicates that she has not been able to manage without the level of supports represented by residential care and custody.

Additionally, on cross-examination, when asked whether the substantial risk of serious harm "would be that she's just susceptible to people telling her what to do," Dal Cerro responded, "That would be part of it, but the other part of it would be her inability to self-direct her own behaviors … in a minimally effective way."

¶13 I conclude that Dal Cerro's testimony is not sufficient to show that H.K.B. presents a substantial risk of a specific, foreseeable, and serious harm to herself or others. Dal Cerro testified generally that H.K.B. was not able to provide

for her own needs or safety, that she was vulnerable to the influence of others, and that historically H.K.B. "ha[d] not been able to manage" without residential care and custody. However, this testimony is vague and does not identify any specific harm that is directly foreseeable or serious, or of which there is a substantial risk. Because Dal Cerro's testimony lacks this specificity, it does not sufficiently show that H.K.B. presented a substantial risk of a serious and foreseeable harm under WIS. STAT. § 55.08(1)(c).

¶14 This conclusion is supported by *Outagamie County Department of Health and Human Services v. L.C.E.*, No. 2023AP929, unpublished slip op. (WI App June 4, 2024), which H.K.B. cites as persuasive authority. *See* WIS. STAT. § 809.23(3)(b) (stating that unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for persuasive value). In *L.C.E.*, a community support specialist testified that "absent protective placement, [L.C.E.] would be 'vulnerable to the abuse of other people,' might stop taking her medication, and might not be able to perform all the activities of daily living." *Id.*, ¶15. The *L.C.E.* court concluded that this testimony was "speculative and vague," and did "not rise to the level of the specific and substantial risk of serious harm required by WIS. STAT. § 55.08(1)(c)." *Id.* The court explained that the community support specialist's testimony

> did not specify what kind of abuse [L.C.E.] would be "vulnerable" to; why [L.C.E.] takes the medication and what symptoms may reappear if she stops taking medication; what activities of daily living [L.C.E.] may not be able to perform on her own; how any of these factors would affect [L.C.E.'s] ability to care for herself; or how any of these concerns would lead to serious harm to [L.C.E.] or others."

*Id.* In addition, a physician testified in *L.C.E.* that L.C.E.'s incapacity was permanent or likely to be permanent and that, due to her incapacity, L.C.E. was

7

"'so incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others.'" *Id.*, ¶7. Pertinent here, the physician testified that L.C.E.'s apartment was "quite dirty" and that its condition could worsen if L.C.E. was not protectively placed. *Id.*, ¶17. The *L.C.E.* court concluded that "this vague concern does not demonstrate that [L.C.E.] is totally incapable of providing for her own care." *Id.* Like the testimony in *L.C.E.*, Dal Cerro's testimony is vague and "does not rise to the level of the specific and substantial risk of serious harm required by WIS. STAT. § 55.08(1)(c)." *Id.*, ¶15; *see also* **Wood County v. Zebulon K.**, Nos. 2011AP2387, 2011AP2394, unpublished slip op. ¶¶15, 16 (WI App Feb. 7, 2013) (concluding that evidence that individuals were "unable to prevent financial exploitation" and "easy to manipulate" did not establish that there was a substantial risk of serious harm under § 55.08(1)(c)); *Clark County v. R.D.S.*, No. 2022AP229, unpublished slip op. ¶¶13, 14 (WI App Aug. 18, 2022) (concluding that testimony that individual might stop taking medication and become "more paranoid," did not shower more than once a week without prompts, and might forget to turn off the oven was not sufficient to establish § 55.08(1)(c)'s dangerousness element).

¶15 In arguing that there is sufficient evidence that H.K.B. continued to meet WIS. STAT. § 55.08(1)(c)'s element of dangerousness, the County does not identify any evidence aside from Dal Cerro's testimony. Because I conclude that Dal Cerro's testimony is not sufficient evidence that H.K.B. presents a substantial risk of specific, foreseeable, and serious harm, I reject the County's argument that there was sufficient evidence that H.K.B. continued to meet § 55.08(1)(c)'s

dangerousness element.[5]    Accordingly, I reverse the circuit court's order continuing protective placement.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] As stated, Dal Cerro also prepared a report based on his evaluation of H.K.B. Although Dal Cerro's report was submitted to the circuit court, the parties do not dispute that the report was not admitted into evidence, and as noted above, the circuit court does not appear to have relied on Dal Cerro's report. H.K.B. argues that, because the report was not admitted into evidence, this court cannot consider it when determining whether the County provided sufficient evidence that H.K.B. satisfied WIS. STAT. § 55.08(1)'s standards for protective placement. The County does not respond to this argument, and in arguing that there was sufficient evidence that H.K.B. continued to meet § 55.08(1)'s standards for protective placement, the County relies exclusively on Dal Cerro's hearing testimony, and does not rely on Dal Cerro's report. Accordingly, I do not consider Dal Cerro's report. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded); *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments[.]").

Similarly, I observe that in some nonbinding cases in which this court has reviewed circuit court orders continuing protective placement, we have examined not only the reports, documents, and testimony generated in connection with the annual review at issue on appeal, but also reports, documents, and testimony admitted into evidence in the initial protective placement and earlier annual reviews. *See, e.g.*, *Ozaukee County v. S.S.*, No. 2024AP759-FT, unpublished slip op. ¶¶7-9 (WI App Sept. 11, 2024); *Douglas County v. J.M.*, No. 2022AP2035, unpublished slip op. ¶¶2, 20, 24 (WI App Nov. 28, 2023). Here, however, the County does not rely on cases such as *S.S.* or *J.M.*, nor does it rely on any testimony or evidence generated in connection with H.K.B.'s initial protective placement or earlier annual reviews. Instead, the County relies exclusively on Dal Cerro's testimony from the most recent annual review hearing. As a result, I do not consider any testimony or evidence associated with H.K.B.'s initial protective placement or earlier annual reviews. *See Industrial Risk*, 318 Wis. 2d 148, ¶25.