COURT OF APPEALS
DECISION
DATED AND FILED

September 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP834-FT**

Cir. Ct. No. **2014ME30**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF C.A.E.:

WALWORTH COUNTY,

PETITIONER-RESPONDENT,

V.

C.A.E.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Walworth County: DANIEL S. JOHNSON, Judge. *Affirmed.*

¶1    REILLY, P.J.[1]  Carly[2] appeals from an order of the circuit court extending her involuntary commitment and from an order for involuntary medication and treatment.  Carly argues that the circuit court erred when it ordered recommitment and involuntary medication based on hearsay and that Walworth County (the County) failed to present sufficient evidence to support the orders.  We conclude that the evidence supports the circuit court's conclusion that Carly is mentally ill, is a proper subject for treatment, would be a proper subject for commitment if treatment were withdrawn, and is not competent to refuse medication.  *See* WIS. STAT. §§ 51.20(1)(a)1.-2., (am); 51.61(1)(g)4.  Accordingly, we affirm.

*Background*

¶2    The record on appeal indicates that Carly was first subject to WIS. STAT. ch. 51 orders for involuntary commitment and involuntary medication and treatment in April 2014.  These orders have since been extended multiple times.  In September 2019, the County petitioned for a one-year extension of the most recent orders based on an examination report by Dr. Robert Rawski, M.D.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  The parties refer to C.A.E. as "Carly."  We will as well.

¶3    The circuit court held an extension hearing on October 2, 2019. Rawski was the only witness.[3] Rawski testified that Carly failed to attend her scheduled examination appointment. WISCONSIN STAT. § 51.20(9)(a)1. provides that a licensed physician or psychologist shall be appointed "to personally examine the subject individual," and while § 51.20(9)(a)4.[4] allows the individual to remain silent during the examination, it does not authorize him or her to skip the court-ordered exam. If that were the case, an individual subject to commitment proceedings could merely avoid extension of the commitment by not attending the examination appointment. Due to Carly's failure to meet with Rawski, he was required to rely on medical and treatment records in lieu of a recent examination. *Cf. **Walworth County v. Therese B.***, 2003 WI App 223, ¶17, 267 Wis. 2d 310, 671 N.W.2d 377 ("This is not to say that the proposed ward's rightful refusal to participate in the court-ordered evaluation will obstruct a guardianship and protective placement proceeding. When the proposed ward has refused to

---

[3] Rawski also submitted an evaluation report. The report comprises twenty-three pages, detailing Carly's treatment history since at least 2014 and contains additional support for Rawski's conclusions. As Carly properly indicates, however, the County in this case failed to move Rawski's report into evidence. Therefore, we review only Rawski's testimony at the hearing, despite the inclusion of the report in the record on appeal. *Langlade County v. D.J.W.*, 2020 WI 41, ¶7 n.4, 391 Wis. 2d 231, 942 N.W.2d 277; *Winnebago County v. S.H.*, 2020 WI App 46, ¶2 n.3, ___ Wis. 2d ___, ___ N.W.2d ___.

[4] WISCONSIN STAT. § 51.20(9)(a)4. provides:

> Prior to the examination, the subject individual shall be informed that his or her statements can be used as a basis for commitment, that he or she has the right to remain silent and that the examiner is required to make a report to the court even if the subject individual remains silent. The issuance of such a warning to the subject individual prior to each examination establishes a presumption that the individual understands that he or she need not speak to the examiner.

cooperate, the examining professional is still free to review all of the records that are available in reaching his or her opinion.").

¶4 At the extension hearing, Rawski testified that Carly has schizoaffective disorder, a treatable mental illness, and that she remains a proper subject for treatment. Rawski utilized his five prior reports as well as medical records and legal documents in the County's possession to testify that during periods when Carly is noncompliant with her medication she experiences "paranoid delusions, irritability, agitation, disorganization of thought and behavior, threats and efforts at physical harm to others," and a "high risk for aggression" "with associated dangerous behavior." Without her medication, Carly's dangerousness escalates greatly and "it's only a matter of weeks to a couple of months before dangerousness escalates to the point where either law enforcement is involved or her husband is bringing her in out of concern for his own personal safety."

¶5 Given the expert opinion evidence offered by Rawski, the circuit court granted the County's request for an extension and entered the orders for an extension of the involuntary commitment and involuntary medication and treatment effective for one year. Carly appeals.

*Standard of Review*

¶6 The standards governing involuntary commitments under WIS. STAT. § 51.20 are well known and often discussed in our case law. To involuntarily commit a person, the county has the burden to prove by clear and convincing evidence that the person is (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous. *See* § 51.20(1)(a)1.-2., (13)(e); ***Langlade County v. D.J.W.***, 2020 WI 41, ¶¶23, 29, 391 Wis. 2d 231, 942 N.W.2d 277; ***Fond du Lac***

*County v. Helen E.F.*, 2012 WI 50, ¶20, 340 Wis. 2d 500, 814 N.W.2d 179. The circuit court may extend the individual's commitment for up to one year. Sec. 51.20(13)(g)1.; *D.J.W.*, 391 Wis. 2d 231, ¶31. The same standards apply to extensions of the commitment, except the county may satisfy the showing of dangerousness by demonstrating "that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am); *D.J.W.*, 391 Wis. 2d 231, ¶32.

¶7       WISCONSIN STAT. § 51.20(1)(am) recognizes that "an individual's behavior might change while receiving treatment" and, accordingly, "provides a different avenue for proving dangerousness if the individual has been the subject of treatment for mental illness immediately prior to commencement of the extension proceedings" as the individual "may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior." *Portage County v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509. In that way, § 51.20(1)(am) is an "alternative evidentiary path, reflecting a change in circumstances occasioned by an individual's commitment and treatment." *J.W.K.*, 386 Wis. 2d 672, ¶19. "However, dangerousness remains

an element to be proven to support both the initial commitment and any extension."[5] *Id.*; *see also D.J.W.*, 391 Wis. 2d 231, ¶34.

¶8 Our review of an extension order presents a mixed question of fact and law. *D.J.W.*, 391 Wis. 2d 231, ¶24. We will uphold the court's findings of fact unless clearly erroneous. *Id.* Whether the facts in the record satisfy the statutory standard for recommitment is a question of law that this court reviews de novo. *Id.*, ¶25.

*Hearsay*

¶9 Carly first argues that Rawski improperly used hearsay to support his opinions.[6] Specifically, she objects to Rawski's statements that "when Carly stops medication she becomes aggressive or dangerous," that "[l]aw enforcement becomes involved, and her husband fears for his safety," and "that Dr. [Steven] Ortell[, M.D.,] had explained the advantages and disadvantages of medication to Carly over the years." While Carly admits that an expert may rely on hearsay in forming an opinion, *see* WIS. STAT. § 907.03, she argues that the underlying

---

[5] In *D.J.W.*, 391 Wis. 2d 231, ¶¶40-41, our supreme court clarified that "going forward circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." The circuit court did not make these factual findings. Carly argues that the circuit court must "make factual findings tied to the standard of dangerousness in § [51.20(1)(a)2.] that warrants the recommitment." As the County explains, however, we have previously determined that the "going forward" language precludes retroactive application to decisions of the circuit courts prior to *D.J.W.*'s release. *See S.H.*, ___ Wis. 2d ___, ¶14. Carly does not present an argument for retroactive application on appeal.

[6] Carly acknowledges that trial counsel failed to object to this testimony on hearsay grounds in the circuit court, but argues that we may review the claim for plain error where, for example, an individual's right to confront and examine witnesses is violated based on the admission of inadmissible evidence. *See State v. Jorgensen*, 2008 WI 60, ¶¶1, 33-34, 310 Wis. 2d 138, 754 N.W.2d 77. We will address her arguments.

hearsay considered by the expert is still inadmissible, *see* ***S.Y. v. Eau Claire County***, 156 Wis. 2d 317, 327, 457 N.W.2d 326 (Ct. App. 1990).

¶10     We allow experts to rely on hearsay statements to support his or her opinion. *See* WIS. STAT. § 907.03 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."); ***Therese B.***, 267 Wis. 2d 310, ¶¶17, 19-20; *see also* WIS. STAT. § 51.20(9)(a)5. ("The subject individual's treatment records shall be available to the examiners."); ***Strelecki v. Firemans Ins. Co.***, 88 Wis. 2d 464, 477, 276 N.W.2d 794 (1979) ("This court has … consistently held that a physician may properly testify and support a diagnosis, the foundation for which is gleaned in part from medical evidence of which he has no personal knowledge and which is obtained from the medical reports of others.").

¶11     In reaching his opinion of Carly's suitability for extension in this matter, Rawski utilized his five prior reports, dating back to December 2014, and medical and legal records compiled by Walworth County HHS since the time of his last examination of Carly. Rawski testified that the records he utilized were "of a type reasonably relied upon by experts in [his] field in forming opinions or inferences on the mental condition of an individual." Rawski's conclusions were based not only on the information contained in Carly's treatment records, but also on his own personal observations of Carly dating back to 2007 when he examined Carly's competency to stand trial in a criminal case. Pursuant to WIS. STAT. § 907.03, there is no "hearsay" error in the receipt of Rawski's expert opinions.

*Involuntary Commitment*

¶12    Carly next argues that there was insufficient evidence for the circuit court's recommitment order. The circuit court found that the first two elements of WIS. STAT. § 51.20(1)(a)1.—that Carly is mentally ill and that she is a proper subject for treatment—were uncontested, and Carly does not challenge those findings on appeal. Carly only challenges the third element: dangerousness.

¶13    Rawski testified that Carly would be a proper subject for commitment if her treatment were withdrawn as whenever Carly is "noncompliant with medication, she becomes extremely irritable, agitated and at high risk for aggression," and there is a "substantial likelihood" that those behaviors would reoccur in the absence of treatment as without medication "she would be much more symptomatic and her risk of dangerousness would escalate greatly." Rawski identified Carly's symptoms as "paranoid delusions, irritability, agitation, disorganization of thought and behavior, threats and efforts at physical harm to others." Rawski properly offered his opinions as to Carly's condition to a reasonable degree of medical certainty based on his previous examinations as well as Carly's treatment records.

¶14    Rawski observed that "there have been at least two times since 2014 where she was noncompliant … or insufficiently medicated where her husband brought her to [health and human services] out of concern for his own safety in response to her symptoms," and "it's only a matter of weeks to a couple of months before [her] dangerousness escalates to the point where either law enforcement is involved or her husband is bringing her in out of concern for his own personal safety." *See* ***Winnebago County v. S.H.***, 2020 WI App 46, ¶¶15-16, ___ Wis. 2d ___, ___ N.W.2d___. Based on Rawski's testimony, "there is a substantial

likelihood" that Carly is dangerous pursuant to WIS. STAT. § 51.20(1)(a)2. such that she "would be a proper subject for commitment if treatment were withdrawn." *See* § 51.20(1)(am).

*Involuntary Medication and Treatment*

¶15    Carly also argues that there was insufficient evidence for the circuit court's involuntary medication and treatment order.  Under WIS. STAT. § 51.61, an individual has the right to refuse medication unless a court has determined that the individual is not competent to make that decision.  ***Outagamie County v. Melanie L.***, 2013 WI 67, ¶¶53, 89, 349 Wis. 2d 148, 833 N.W.2d 607.  There are two ways for an individual who is mentally ill and who has received the requisite explanation of the advantages and disadvantages of and alternatives to medication[7] to be found incompetent to refuse medication.  ***Id.***, ¶54.  One is if "[t]he individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives," and the second is if "[t]he individual is substantially incapable[8] of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment."  Sec. 51.61(1)(g)4.

---

[7] Our supreme court has stated that "[t]he explanation should be timely, and, ideally, it should be periodically repeated and reinforced."  ***Outagamie County. v. Melanie L.***, 2013 WI 67, ¶67, 349 Wis. 2d 148, 833 N.W.2d 607.

[8] "Substantially incapable" "means, *to a considerable degree*, a person lacks the ability or capacity to apply an understanding of the advantages and disadvantages of medication to his or her own condition."  ***Melanie L.***, 349 Wis. 2d 148, ¶70.

¶16    The County bears the burden of proving an individual's incompetence to refuse medication under either statutory provision by clear and convincing evidence.  WIS. STAT. § 51.20(13)(e); *Melanie L.*, 349 Wis. 2d 148, ¶37.  We will not disturb the circuit court's findings of fact unless clearly erroneous, but we review whether the County met its burden under the statute de novo.  *Melanie L.*, 349 Wis. 2d 148, ¶¶38-39.

¶17    In this case, Rawski testified that the advantages, disadvantages, and alternatives to medication had been explained to Carly over the years by Ortell and Rawski.[9]  Rawski testified that Carly is not competent to accept or refuse the medications and that she "continues to have poor insight and judgment and cooperation with the treatment providers."  He explained,

> [t]he problem with [Carly's] mental illness is that it leads her [to be] delusional about the need for treatment and she is subject to all sorts of somatic delusions … about the medications negatively affecting her health or organs. When she's more symptomatic, these delusions are much stronger, but she consistently holds a distorted perspective of the advantages and disadvantages to the treatment despite the intellectual capacity to understand them.

¶18    Rawski's testimony was uncontradicted, and we could end there, but we acknowledge Rawski's explanation to the court as to why he and the treatment providers allow some non-compliance by Carly:  Carly has no interest in being seen and will not cooperate if you try to engage her, which ends up creating chaos within her relationship with her husband, and "so it's been concluded that trying to

---

[9] On cross examination, counsel noted that Carly's medication was changed in summer of 2018, and counsel questioned whether, considering the change, the advantages and disadvantages of receiving her current medication had been explained to her.  Rawski testified that Carly had received her current medication on "several occasions in the past" and that she was receiving it again "because she requested it and Dr. Ortell obliged and switched" her medication.

intrude upon that actually aggravates her and her illness more than if staff simply just made sure she got the injections on time."

¶19    We agree with the court's conclusion that "[i]t's certainly the case that the advantages, disadvantages and alternatives have been explained to her on a number of different occasions over the years," and based on Rawski's testimony, Carly "is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives such as to make an informed choice as to whether to accept or refuse those medications that she's been prescribed." *See* WIS. STAT. § 51.61(1)(g)4.b.

¶20    While Carly argues that the evidence was insufficient, the County clearly met its burden of proof, and Carly offered no evidence at the extension hearing to rebut the County's proof that she received the requisite explanation of her proposed medication.  Carly admits that "Rawski last discussed treatment with Carly in 2014," and "[h]earsay suggests Dr. Ortell discussed it with her in 2018."  Carly also does not develop an argument that the timing of the explanation of her medication violated *Melanie L.*'s requirement that it be "timely, and, ideally, it should be periodically repeated and reinforced."  *Melanie L.*, 349 Wis. 2d 148, ¶67.  Instead, Carly claims that even if the requisite explanations were provided to her, that fact does not prove that she was incompetent on October 2, 2019.  Carly suggests that the purpose of WIS. STAT. § 51.61(1)(g)4. "is not to ensure that a doctor notifies a person of the advantages and disadvantages of a proposed medication" but "to engage the person in discussion in order to assess her competence or incompetence to make treatment decisions."  The problem with Carly's argument is that she failed to meet with Rawski such that he could "engage" her in discussion.

11

¶21 In support of her position, Carly identifies this court's unpublished decision in *Waukesha County v. M.J.S.*, No. 2017AP1843, unpublished slip op. ¶32 (WI App Aug. 1, 2018),[10] where we reversed the order for involuntary medication as the government failed to establish the requirements under WIS. STAT. § 51.61(1)(g)4. and failed to show that M.J.S. relinquished his right to be advised of the information. In *M.J.S.*, the court clerk sent a letter to M.J.S. indicating that he should schedule an appointment with two examiners, but then also, confusingly, indicated that the doctors would contact him. *M.J.S.*, No. 2017AP1843, ¶29. It was undisputed that M.J.S. never received the required explanation, and, accordingly, this court concluded that the government did not satisfy the statute. *Id.*, ¶22. Further, due to the confusing nature of the letter M.J.S. received, the court could not conclude that he had waived his rights. *Id.*, ¶28.

¶22 *M.J.S* is distinguishable. In *M.J.S.*, it was undisputed that the requisite explanation of the advantages and disadvantages of medication or treatment had not been provided to M.J.S. *Id.*, ¶22. Here, there was testimony that those explanations had been provided to Carly.[11] Also, as we explained in *M.J.S.*, we agree that an individual "cannot just plug his [or her] ears with his [or her] fingers to avoid hearing the advantages, disadvantages, and alternatives to treatment, and then subsequently complain that he [or she] was not provided the

---

[10] We may cite an unpublished decision "for its persuasive value." WIS. STAT. RULE 809.23(3)(b).

[11] Circumstantial evidence in the record based on her treatment history also supports the fact that Carly received the requisite explanations, was aware of the advantages and disadvantages of different medications, and knew that other options were available to her as she asked that her medication be switched in 2018 and it was. *See State v. Treadway*, No. 2015AP591, unpublished slip op. ¶21 (WI App Dec. 1, 2015).

statutory explanation." *Id.*, ¶29. Rawski's testimony that Carly has not been cooperative in meeting with himself and Ortell on a regular basis was uncontested. Accordingly, she cannot now complain that she did not receive recent explanations regarding her medication and that Rawski did not "engage" with her "to assess her competence or incompetence to make treatment decisions."

¶23 We conclude that pursuant to WIS. STAT. § 51.20(1)(am), Rawski's testimony sufficiently established that Carly is a proper subject for commitment if treatment is withdrawn and that Carly "is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment." WIS. STAT. § 51.61(1)(g)4.b.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.