IN the MATTER OF the GUARDIANSHIP OF KEISHA M.S.:
ANNA S., Petitioner-Respondent,

v.

DIANA M., Respondent-Appellant.

Court of Appeals

*No. 02–2640. Submitted on briefs September 8, 2003.—
Decided January 22, 2004.*

2004 WI App 45

(Also reported in 678 N.W.2d 285.)

411

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Leslie D. Shear, Frank J. Remington Center*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Dianne M. Soffa, Soffa & Devitt, LLC*, Whitewater.

On behalf of the guardian ad litem, the cause was submitted on the brief of *Christopher J. Rogers*, Fort Atkinson.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. Diana M., the mother of Keisha M.S., appeals the circuit court's order appointing Anna S. as guardian of Keisha's person and estate rather than Diana's mother, Mary O. Diana contends the circuit court applied an incorrect legal standard because it failed to give the requisite weight to Diana's nomination of Mary as Keisha's guardian, and it erroneously viewed Anna as having been nominated as Keisha's guardian by Keisha's deceased father. We conclude the court applied the proper legal standard. We do not address Diana's contention that the court erred in failing to impose notice requirements under Wis. Stat. § 767.327 (2001–02)[1] related to Anna's ability to relocate with Keisha because Diana did not ask the court to impose these requirements. Accordingly, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

## BACKGROUND

¶ 2. Keisha was born to Diana on April 24, 1995. Brian S. was adjudicated her father in a paternity action. During Keisha's first four years there were substantial periods of time when Keisha did not live with Diana because Diana was incarcerated. In an order entered on October 1, 1999, Brian, with whom Keisha was then living, was granted physical placement of Keisha, with Diana having the right to have Keisha visit her in prison once a month. Brian was granted sole legal custody of Keisha in all matters, except that Brian and Diana had joint legal custody in matters of religion and education. Subsequent orders permitted Brian to relocate to Illinois with Keisha. Keisha was living in Illinois with Brian, his wife, Anna S., and their child when Brian died in a work-related accident on October 19, 2001.

¶ 3. A few days after Brian's death, Diana initiated this action, asking that her mother, Mary, be appointed guardian of the person and the estate of Keisha because she, Diana, was incarcerated and unable to take custody of Keisha at that time. Anna filed a competing petition, requesting that she be appointed Keisha's guardian. By that time Anna had moved back to Wisconsin and Keisha was living with her.

¶ 4. In early December 2001, Diana asked that her petition be dismissed, because she anticipated being released from prison, and the court dismissed her petition. The court held a trial on Anna's petition, which Diana opposed. The trial was held over five days between February and June 2002. By the last day of the trial, Diana was again incarcerated and, accordingly, withdrew her objection to the appointment of a guardian for Keisha and stated her wish that her mother, Mary, be appointed.

¶ 5. In making its decision to appoint Anna rather than Mary as Keisha's guardian, the court observed that WIS. STAT. § 880.09 required it to consider nominations by any interested person, that Diana had nominated her mother and that the court considered that Brian, by his conduct before his death, had effectively nominated Anna. The court stated that the legal standard to be applied was Keisha's best interests. The court determined that contact between Diana and Keisha should be maintained and that contact would be enhanced if Mary were Keisha's guardian, but, the court stated, it did not view that as the highest goal, noting that Diana had been absent in Keisha's life because of her continuing criminal activity, self-centeredness, and addictions.

¶ 6. The court summarized the areas of strengths of Mary and of Anna and the concerns the court had with respect to each, indicating that it was a very close question which of the two would be a better guardian for Keisha. Ultimately, after taking into account the guardian ad litem's recommendation that Anna be the guardian, the court decided that Anna would provide more stability for Keisha than Mary would: Anna had cared for Keisha longer than any living person; she had purchased a home in Edgerton, the town where Keisha had lived during her preschool years; and Anna had represented that she would not take outside employment for some time, thus being able to provide constant care for Keisha as well as Anna's and Brian's two children, who were close in age to Keisha. In addition, the court was concerned that Mary's loyalty to her daughter, Diana, had resulted in some decisions that were not based on Keisha's best interests. While appointing Anna as the guardian and her home as Keisha's primary residence, the court granted substan-

tial placement with Mary, with the understanding that Mary would take Keisha to see her mother where she was incarcerated.

## DISCUSSION

¶ 7. The parties agree that the circuit court's decision on guardianship and placement involves a determination of Keisha's best interests, and that this determination is committed to the trial court's discretion. *See Brezinski v. Barkholtz*, 71 Wis. 2d 317, 327–28, 237 N.W.2d 919 (1976). We affirm discretionary decisions if the circuit court applies the proper legal standard to the relevant facts and uses a rational process to reach a reasonable result. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). Whether the circuit court applied the correct legal standard in exercising its discretion presents a question of law, which we review de novo. *F.R. v. T.B.*, 225 Wis. 2d 628, 637, 593 N.W.2d 840 (Ct. App. 1999).

¶ 8. Diana makes two challenges to the legal standard applied by the court: first, the court did not give the weight to Diana's nomination of a guardian that is required by Wis. Stat. § 880.09 and by the United States Constitution, and, second, the court treated Anna's petition to be appointed as guardian as a nomination by Brian.

¶ 9. Regarding the proper weight to be applied to Diana's nomination of her mother, Diana contends that Wis. Stat. § 880.09 and the United States Constitution require the circuit court to give a preference to Diana's nomination over other nominations, which the circuit court did not do. Section 880.09 provides: "The court

shall consider nominations by any interested person and, in its discretion, shall appoint a proper guardian, having due regard for the following," and then lists a number of factors.[2] Diana relies on § 880.09(2) and (4), which provide:

---

[2] WISCONSIN STAT. § 880.09 provides:

**Nomination; selection of guardians.** The court shall consider nominations made by any interested person and, in its discretion, shall appoint a proper guardian, having due regard for the following:

(1) NOMINATION BY MINOR. A minor over 14 years may in writing in circuit court nominate his or her own guardian, but if the minor is in the armed service, is without the state, or if other good reason exists, the court may dispense with the right of nomination.

(2) PREFERENCE. If one or both of the parents of a minor, a developmentally disabled person or a person with other like incapacity are suitable and willing, the court shall appoint one or both of them as guardian unless the proposed ward objects. The court shall appoint a corporate guardian under s. 880.35 only if no suitable individual guardian is available.

(3) EFFECT OF NOMINATION BY MINOR. If neither parent is suitable and willing, the court may appoint the nominee of a minor.

(4) GUARDIAN OF THE PERSON NOMINATED BY WILL. Subject to the rights of a surviving parent, a parent may by will nominate a guardian of the person of his or her minor child.

(5) GUARDIAN OF THE ESTATE NOMINATED BY WILL. A parent may by will nominate a guardian of the estate of the parent's minor child and may waive the requirement of a bond as to such estate derived through the will.

(6) TESTAMENTARY GUARDIANSHIP OF CERTAIN PERSONS. Subject to the rights of a surviving parent, a parent may by will nominate a guardian and successor guardian of the person or estate of any of his or her minor children who are in need of guardianship. For a person over the age of 18 found to be in need of guardianship under s. 880.33 by reason of a developmental disability or other like incapacity, a parent may by will nominate a testamentary guardian.

(2) PREFERENCE. If one or both of the parents of a minor, a developmentally disabled person or a person with other like incapacity are suitable and willing, the court shall appoint one or both of them as guardian unless the proposed ward objects. The court shall appoint a corporate guardian under s. 880.35 only if no suitable individual guardian is available.

. . . .

(4) GUARDIAN OF THE PERSON NOMINATED BY WILL. Subject to the rights of a surviving parent, a parent may by will nominate a guardian of the person of his or her minor child.

According to Diana, it is implicit in these two provisions that the court must give a preference to a surviving parent's nomination of a guardian, and that is how "due regard" should be interpreted. This result is constitutionally required, Diana asserts, because a parent has a fundamental interest in the care and custody of her child, and from that necessarily flows the presumption that the decision of a parent who has not been declared unfit is in the child's best interests.

(7) ANTICIPATORY NOMINATION; PREFERENCE. Any person other than a minor may, at such time as the person has sufficient capacity to form an intelligent preference, execute a written instrument, in the same manner as the execution of a will under s. 853.03, nominating a person to be appointed as guardian of his or her person or property or both in the event that a guardian is in the future appointed. Such nominee shall be appointed as guardian by the court unless the court finds that the appointment of such nominee is not in the best interests of the person for whom, or for whose property, the guardian is to be appointed.

¶ 10. We address first the proper construction of WIS. STAT. § 880.09. In construing a statute, we begin with the language of the statute, and, if that is plain, we apply that language to the facts at hand. *F.R.*, 225 Wis. 2d at 638.

¶ 11. We agree with Anna and the guardian ad litem that the plain language of WIS. STAT. § 880.09 does not require the court to give a preference to a parent's nomination of a guardian. The preference provided for in § 880.09(2) is for a parent who is suitable and willing to be appointed as a guardian; that subsection does not address a parent's wishes for another to act as guardian when the parent is not suitable to act as guardian. There is no dispute that Diana is not suitable to act as guardian because of her incarceration and, therefore, this subsection does not apply. Section 880.09(4) does not address the surviving parent's wish that another person act as guardian, and, in any event, does not direct the court to prefer a deceased parent's testamentary nomination.

¶ 12. We also agree with Anna and the guardian ad litem that *Brezinski* supports their position that the circuit court was not required to give a preference to Diana's nomination. In that case, the father of the children, who was incarcerated for the murder of their mother, requested that his sister and her husband be appointed their guardians. 71 Wis. 2d at 319. The circuit court appointed the father's sister and her husband, rather than the children's maternal grandparents, and made the comment that the father's nomination should carry " 'some weight.' " *Id.* at 324–25. The grandparents appealed, contending that the father's nomination should have carried no weight because he stipulated he was unsuitable as a guardian due to his

incarceration. *Id.* at 325. The supreme court rejected this contention, first explaining that "unsuitability" as a guardian was not the same as unfitness as a parent and then stating:

> If a parent is found unfit to be a guardian, a more precise determination than the statutory requirement of "unsuitable," there may be a basis for ruling error in considering his recommendation. The more correct attitude would be to weigh the nomination for what it is worth, especially in light of sec. 880.09, Stats., which requires that the court consider nominations made by any interested person. This statute, acknowledged by the trial court, does prefer that a natural parent be chosen as guardian if he is suitable and willing. It is a recognition of the natural love that most frequently exists between child and parent. A rule barring the consideration of the nomination of "unsuitable" parents would be unreasonable if applied against those parents suffering from physical disability or failed fortunes, whose intimacy with the minor uniquely qualifies them to make a most suitable recommendation despite their own unsuitability.

*Id.* at 325–26.

¶ 13. The grandparents in *Brezinski* also argued that there was no statutory basis for a presumption that the father's nomination took precedence over other factors. *Id.* at 325. The court stated that this argument was "perhaps correct," but that the circuit court had not given the father's nomination a presumption of precedence or controlling weight. *Id.* at 325, 327. Rather, the supreme court said, the circuit court had considered the father's nomination along with other evidence and had given it the weight the circuit court considered was appropriate based on the evidence. *Id.* at 327.

¶ 14. Although the challenge in *Brezinski* was that the circuit court gave too much weight to the

incarcerated parent's nomination rather than too little, the court's analysis is helpful here: the circuit court is to consider the nomination of the surviving parent who is not "suitable" to be a guardian and to give it due weight, meaning the weight that the circuit court considers appropriate in light of all the evidence. Arguably the court in *Brezinski* did not expressly decide that a circuit court errs if it presumes that a parent's nomination takes precedence over other possible guardians or has controlling weight: the court said only that that proposition was "*perhaps* correct," and did not need to be more definitive because it concluded the circuit court did not make such a presumption. However, a presumption that the parent's nomination takes precedence or has controlling weight is inconsistent with what the supreme court in *Brezinski* expressly said is the correct approach under the statute: to give the parent's nomination the weight the court considers appropriate. *Id.* at 325–26.

¶ 15. We conclude that Wis. Stat. § 880.09 does not require the circuit court to give Diana's nomination of a guardian a preference over other nominations or a presumption that it is in Keisha's best interests. Rather, the statute requires the circuit court to consider Diana's nomination, because she is "an interested person," and to give it the weight the court considers appropriate in light of all the evidence.

■

¶ 16. We next address Diana's argument that, as a matter of constitutional law, we must presume that her nomination is in Keisha's best interest, thus giving a preference to her nomination over other nominations. The Fourteenth Amendment's guarantee of due process includes protection of the fundamental liberty interest in the care, custody, and control of one's children. *Troxel*

*v. Granville*, 530 U.S. 57, 65 (2000). In *Troxel*, on which Diana relies, the Supreme Court held that the fit, custodial parent's due process right to make decisions concerning the care, custody, and control of her daughters was violated by a Washington state court's application of a grandparent visitation statute, pursuant to which the state court ordered visitation with the grandparents against the mother's wishes and without giving those wishes any material weight.[3] *Id.* at 71–74. The issue in *Troxel* is significantly different than that presented in this case. The crux of the Supreme Court's analysis in *Troxel* is that the due process clause does not allow the State to intervene in the child-rearing decision of a fit, custodial parent simply because a court believes there is a better decision. *Id.* at 72–73. It is true that Diana has not been adjudicated unfit. However, she does not now have custody of Keisha, she has not provided care for Keisha for the last several years, and the reason the State is intervening in the sense of appointing a guardian is that Diana is not now able to have custody of Keisha or provide for her care.

¶ 17. For similar reasons, we do not view *Barstad v. Frazier*, 118 Wis. 2d 549, 348 N.W.2d 479 (1984), as persuasive support for Diana's position. In *Barstad*, the supreme court held that the due process protection of a parent's fundamental interest in the care, custody, and control of his or her child required that, in a custody dispute between a parent and a non-parent, the parent

---

[3] We followed *Troxel* in *Roger D.H. v. Virginia O.*, 2002 WI App 35, ¶ 19, 250 Wis. 2d 747, 641 N.W.2d 440, and held that, when applying Wisconsin's grandparent visitation statute, WIS. STAT. § 767.245(3), the court must apply the presumption that a fit custodial parent's decision regarding grandparent visitation is in the best interests of the child.

is entitled to custody unless unfit or unable to care for the child, or other compelling reasons exist to award custody to a third party, such as abandonment or persistent neglect of parental responsibilities. *Id.* at 568. *Barstad* simply does not address the rights of a parent who is not seeking custody of the child and who is not able to have custody or provide for the child's care.

¶ 18. In the absence of any case law presented by Diana that is closer factually and legally to this case, and given the existence of *Brezinski*, we are not persuaded that Diana's fundamental liberty interest in the care, custody, and control of Keisha is violated if her nomination of a guardian is not presumed to be in Keisha's best interests.

■

¶ 19. We now turn to Diana's second challenge to the legal standard employed by the court. According to Diana, when the court stated that it viewed Anna as Brian's nominee, it erroneously treated Anna's petition as the equivalent of a testamentary nomination by Brian under Wis. Stat. § 880.09(4). We do not agree with this reading of the court's comments. The court explained that it viewed particular conduct of Brian's— his discussion with Anna beginning in the summer of 2000 to pursue termination of Diana's parental rights and have Anna adopt Keisha—as evidence that he would want Anna to be Keisha's guardian in the event of his death. This is a reasonable inference from the evidence. Nothing the court said indicates that it treated this inference the same as a designation under § 880.09(4) or viewed Brian's preference for Anna as entitled to more weight, as a matter of law, than Diana's preference for her mother. In addition, we do not view as significant whether Brian's conduct constituted a

"nomination" within the meaning of § 880.09. Anna moved to be appointed guardian and the court was therefore obligated to consider her as a guardian. There was ample evidence to support the court's determination that Brian would have wanted Anna to be guardian in the event of his death, and there is no reason the court could not take that into account in the proper exercise of its discretion.

¶ 20. We conclude that the trial court applied the correct legal standard. As required by WIS. STAT. § 880.09, the court considered Diana's desire to have her mother be Keisha's guardian and gave it the weight the court felt appropriate in light of all the evidence, which the court carefully and thoroughly analyzed. The court also properly considered evidence that, reasonably viewed, shows that Brian would have wanted Anna to be the guardian, and it did not rely on § 880.09(4) in this analysis.

<span style="background:black"></span>

¶ 21. Diana also argues that the trial court erred because its order did not conform to WIS. STAT. § 767.327. Under that statute, when the court grants physical placement to more than one parent, the court must order a parent with legal custody and physical placement rights to provide the other parent with at least sixty days' notice of a change in residence outside the state or within the state at a distance of 150 miles or more from the other parent; the other parent then has the opportunity to object to the move or request a modification in legal custody or physical placement. Section 767.327. Anna responds that Diana never asked to have the provisions of § 767.327 included in the order and asks that we not consider this argument for that reason. The transcript portion that Anna refers us to shows that Diana's counsel asked if there were a restric-

tion on Anna moving out of state. The court responded that it had not anticipated that but would impose as a requirement that Anna notify Diana not less than three weeks before any relocation from her current residence in Edgerton. That requirement was in fact contained in the order. Diana's counsel said nothing to indicate that requirement was inadequate. In her reply brief, Diana does not address this issue. Accordingly, we treat this as a concession that Diana did not raise the issue of notice under § 767.327 in the circuit court, *see Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994), and we do not address it.

*By the Court.*—Order affirmed.