COURT OF APPEALS
DECISION
DATED AND FILED

September 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP481**

STATE OF WISCONSIN

Cir. Ct. No. 2018GN7P

IN COURT OF APPEALS
DISTRICT IV

IN THE MATTER OF THE GUARDIANSHIP AND
PROTECTIVE PLACEMENT OF R.F.:

CLARK COUNTY COMMUNITY SERVICES,

PETITIONER-RESPONDENT,

V.

R. F.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Clark County: LYNDSEY BRUNETTE, Judge. *Reversed and cause remanded with directions.*

¶1     BLANCHARD, P.J.[1]  R.F. appeals a circuit court order continuing his protective placement in an adult group home pursuant to WIS. STAT. §§ 55.08(1) and 55.12.  R.F. argues in pertinent part that the County failed to prove by clear and convincing evidence that continued protective placement would provide the "least restrictive environment … consistent with the needs of" R.F., as required to support the court's decision.  *See* §§ 55.08(1), 55.12(3).  I conclude that Clark County Community Services (the County) failed to prove by clear and convincing evidence that all of the requirements to justify an order for continuing protective placement were met.  Accordingly, I reverse the order.

¶2     R.F. requests in his opening brief on appeal that if this court reverses the order for continued protective placement in an adult group home I should "remand this matter to the circuit court with directions to enter an order transitioning R.F. to protective services."[2]  The County fails to respond to R.F.'s

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Regarding protective services, WIS. STAT. § 55.08(2) provides in pertinent part:

> A court may under [WIS. STAT. §] 55.12 order protective services for an individual who meets all of the following standards:
>
> **(a)** The individual has been determined to be incompetent by a circuit court … and on whose behalf a petition for a guardianship has been submitted.
>
> **(b)** As a result of developmental disability, …, serious and persistent mental illness, or other like incapacities, the individual will incur a substantial risk of physical harm or deterioration or will present a substantial risk of physical harm to others if protective services are not provided.

Neither party suggests that this court has a basis to give any direction to the circuit court as to particular protective services that the circuit court could or must order following remand.  That is
(continued)

request or to otherwise address the remedy in the event of reversal, which I take as a concession that R.F.'s requested remedy is appropriate. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) ("respondents cannot complain if propositions of appellants are taken as confessed which respondents do not undertake to refute"). Accordingly, I remand to the circuit court with directions to enter an order directing that R.F. be transitioned from protective placement to protective services.[3]

## BACKGROUND

¶3 R.F. is now 22. In February 2018, when he was 17, the County filed two petitions based on circumstances arising from his alleged cognitive and developmental disabilities: one for permanent guardianship and a second for an order of protective placement in a behavioral health facility for minors in Vernon County. In April 2018, the circuit court determined that he was incompetent and as a result required a permanent guardianship as a result of a serious and persistent mental illness and a developmental disability.[4] The court also ordered that he be protectively placed in the Vernon County facility for minors. In January 2020, the

---

a topic to be addressed by the circuit court following remand, as that court deems appropriate consistent with Chapter 55 and the Due Process Clause.

[3] Briefing in this appeal concluded on August 8, 2022, with no correspondence from the parties regarding the potential for mootness or a lack of court competency. It does not appear from the record that the circuit court's order for continuing protective placement has expired. Accordingly, R.F.'s requested remedy of reversal and remand with directions is not precluded by our supreme court's ruling that, at least with respect to a recommitment order under WIS. STAT. ch. 51, if the order being reversed has expired, "the circuit court lacks competency to conduct any proceedings on remand. Therefore, reversal is the appropriate remedy in this case." *Sheboygan County v. M.W.*, 2022 WI 40, ¶4, 402 Wis. 2d 1, 974 N.W.2d 733.

[4] R.F. does not dispute the permanent guardianship in this appeal.

location of his protective placement was transferred to an adult group home in Chippewa County.

¶4     The protective placement came up for annual review in 2021, with R.F. contesting it at the *Watts* hearing for which the County petitioned. *See State ex rel. Watts v. Combined Cmty. Servs. Bd. of Milwaukee Cnty.*, 122 Wis. 2d 65, 362 N.W.2d 104 (1985) (requiring an annual review of the necessity for a hearing and, if necessary, a "full due process hearing" addressing the need for continued protective placement).

¶5     Four witnesses testified at the *Watts* hearing.  Two witnesses testified to facts and opinions that favored continuing protective placement.  Dr. Brian Stress, a psychologist who examined R.F. before the hearing, emphasized the view that R.F. is "extremely vulnerable."  Kristofer Geissler, the owner and caretaker of the adult group home in Chippewa County where R.F. had been most recently protectively placed, similarly testified in part that R.F. is "a very vulnerable young man," who "can be talked into a variety of different things."

¶6     Two witnesses gave testimony that effectively opposed continuing protective placement.  Dr. Gail Tasch, a psychiatrist who also evaluated R.F., testified in part that he has "some limitations" and "initially, he would require some help to become fully independent," but also that "[t]here is really no reason why he should be restricted to the property where he is at[,] at the group home." Jennifer Hanson, the owner of a home health care business who ran a group foster home where R.F. resided for "three and a half to four years" while he was in high school, testified in part that R.F. "was very independent with all of his" activities of daily living, "did everyday, normal activities like every other kid in the school," and "has got a good head on his shoulders" and "knows right from wrong."

¶7     R.F. did not testify.

¶8     After the close of evidence, the County argued that R.F.'s protective placement should be continued, emphasizing evidence that it submitted showed that he "is at significant risk of exploitation." The guardian ad litem agreed that protective placement should be continued. R.F.'s attorney argued that the County "has not met [its] burden for showing that protective placement is necessary here," but that R.F. "would be amenable" to some protective services.

¶9     The circuit court granted the County's petition. The court made the observation that "we want to have [R.F.] be more independent" over time, but determined that, as of the time of the hearing, R.F.'s "incapacities … still render [him] incapable of providing for [his] own care and custody, which would create [a] substantial risk of harm to [himself] or others."

## DISCUSSION

¶10    This court has summarized the pertinent review standards in the following terms:

> [T]he circuit court's decision on … [protective] placement involves a determination of … [the] best interests [of the individual sought to be protectively placed], and … this determination is committed to the trial court's discretion. We affirm discretionary decisions if the circuit court applies the proper legal standard to the relevant facts and uses a rational process to reach a reasonable result. Whether the circuit court applied the correct legal standard in exercising its discretion presents a question of law, which we review de novo.

*Anna S. v. Diana M.*, 2004 WI App 45, ¶7, 270 Wis. 2d 411, 678 N.W.2d 285 (citations omitted). "The circuit court's factual findings will not be overturned

unless clearly erroneous." ***Coston v. Joseph P.***, 222 Wis. 2d 1, 22, 586 N.W.2d 52 (Ct. App. 1998); *see also* WIS. STAT. § 805.17(2).

¶11     A circuit court may not order the protective placement of an individual without first determining that the petitioner (here the County) has shown by clear and convincing evidence that the individual meets all four standards in WIS. STAT. § 55.08(1).  ***Coston***, 222 Wis. 2d at 22-23; WIS. STAT. § 55.10(4)(d).  As pertinent here, the four standards are the following:

> (a) The individual has a primary need for residential care and custody.
>
> (b) The individual is … an adult who has been determined to be incompetent by a circuit court.
>
> (c) As a result of developmental disability, …, serious and persistent mental illness, or other like incapacities, the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others.  Serious harm may be evidenced by overt acts or acts of omission.
>
> (d) The individual has a disability that is permanent or likely to be permanent.

Sec. 55.08(1).

¶12     There is an additional requirement:  A petitioner must show that, in addition to the four standards just cited, the individual would be protectively placed "in the least restrictive environment" that meets the needs of the individual. Even if this is not a requirement of the Due Process Clause, it is required when multiple chapter 55 provisions are harmonized.  Under WIS. STAT. § 55.12(3), protective placement "shall be provided in the least restrictive environment and in the least restrictive manner consistent with the needs of the individual to be protected and with the resources of the county department."  *See also* WIS. STAT.

§ 55.08(1) (court may order protective placement "under s. 55.12"). This is reinforced by the "Declaration of policy" in Chapter 55, which states in pertinent part:

> The legislature recognizes that many citizens of the state, because of serious and persistent mental illness, …, developmental disabilities, or other like incapacities, are in need of protective services or protective placement.… This chapter is designed to establish those protective services and protective placements, to assure their availability to all individuals when in need of them, and to place *the least possible restriction on personal liberty and exercise of constitutional rights* consistent with due process and protection from abuse, financial exploitation, neglect, and self-neglect.

WIS. STAT. § 55.001 (emphasis added). In addition, the County on appeal does not dispute that due process and chapter 55 are not satisfied if the petitioner fails to show this requirement by clear and convincing evidence.[5]

¶13     Whether the evidence supports protective placement is an issue of law that I review de novo. ***Walworth Cnty. v. Therese B.***, 2003 WI App 223, ¶21, 267 Wis. 2d 310, 671 N.W.2d 377.

¶14     For purposes of this appeal, R.F. does not dispute that the County proved standards (b) and (d) of WIS. STAT. § 55.08(1).[6] He argues that the County

---

[5] I note that in 2005 Wis. Act 253, 264, and 387, the legislature recodified Chapter 55, with one of many consequences being the amendment of WIS. STAT. § 55.06 to eliminate subsection (9), which explicitly stated that a circuit court could order protective placement of an individual only in "the least restrictive environment consistent with the [individual's] needs." *See* § 55.06(9) (2003-04); *see also* ***K.N.K. v. Buhler***, 139 Wis. 2d 190, 197-98, 407 N.W.2d 281 (Ct. App. 1987) (applying this rule from § 55.06(9)). I interpret the legislature to have left in place this same rule through the 2005 amendments, based on the statutes cited in the text.

failed to prove standards (a) and (c) by clear and convincing evidence. That is, he argues that the County failed to present sufficient evidence on which the circuit court could properly rely to determine that he "has a primary need for residential care and custody," or that his mental illness has resulted in him being "so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself … or others." *See* § 55.08(1)(a), (c).

¶15 R.F. takes the position that, so far as the evidence presented to the circuit court revealed, features of the guardianship (which, to repeat, R.F. does not contest) that include protection of his person and estate, together with court-ordered protective services, "such as a nurse periodically checking to see if he is taking his medications correctly," could be adequate to help R.F., if he were no longer in protective placement, to "provid[e] for his … own care or custody" and avoid "substantial risk of serious harm to himself … or others." This argument was preserved in the circuit court. Counsel for R.F. took the position that "something lesser," such as protective services, would be adequate to meet R.F.'s needs.

¶16 The County on appeal does not direct me to evidence presented at the annual review hearing bearing on the existence or non-existence of alternatives that could have met R.F.'s needs and that would have involved less restriction than 24/7 placement in an adult group home. Instead, the County makes two assertions

---

[6] For context regarding WIS. STAT. § 55.08(1) standards (b) and (d), I note that Dr. Stress stated in a report admitted at the annual review hearing, partially quoting from medical history, that R.F. has as a "mild intellectual disability" and a serious and persistent mental illness, "supported by the diagnosis of 'bipolar disorder, mood disorder due to known physiological condition with fixed features.'"

regarding R.F.'s argument, neither of which is responsive. First, the County states the following:

> Any argument that R.F. could be placed in a lesser restrictive setting is not well[]developed. Dr. Stress supports 24-hour supervision in an [adult family home] based on R.F.'s incapacities. Mr. Geissler similarly supports continued placement in the [adult family home] based on the assistance and reminders R.F. requires with basic daily activities, as well as his concerns regarding the risks to R.F. and others if he does not have the supervision and support the [adult family home] offers.

I disagree that R.F.'s argument is insufficiently developed. The concept is not complicated or obscure, and R.F. makes concrete assertions about allegedly unrebutted evidence that the County simply ignores. Then, in this paragraph, the County proceeds to provide mere summaries of conclusions, not on-point arguments based on the evidentiary record or specific facts found by the circuit court.

¶17 Second, the County posits that "this entire argument" "hang[s]" "on the testimony of Ms. Hanson" against continuing the protective placement. I disagree that this argument depends entirely on Hanson's testimony. The thrust of R.F.'s argument is that the County failed to present clear and convincing evidence to merit continued protective placement, including proof that this is the "least restrictive environment" required to address R.F.'s needs.[7]

---

[7] Further, the circuit court explicitly declined to "discredit" Hanson's testimony, in which she purported to describe her views of the strengths of capacity, character, and habit on which R.F. could rely under various degrees of restriction. The court noted that her testimony was "subjective" and more dated than the testimony of Dr. Stress and Geissler, but it did not find that Hanson was not credible.

¶18     Indeed, as R.F. argues in reply, this position by the County in effect improperly attempts to flip the burden of proof. That is, the County suggests that it was R.F.'s burden to show to the circuit court how the evidence supports the conclusion that continued protective placement would *not* provide the least restrictive environment for R.F.'s needs (*i.e.*, that R.F. had to prove the existence of a less restrictive set of alternatives). This improper orientation appears to be reflected at points in the County's briefing.

¶19     The County argues (somewhat ambiguously): "With the less rigid routine of his current adult family home …, R.F. has not demonstrated the same ability to provide for his own care or custody." It was not R.F.'s obligation to demonstrate an ability to care for himself in the absence of any types of restrictions. It was for the County to demonstrate that the "least restrictive environment" is protective placement. The County misses the target if its position is that it was enough to show that R.F. would do less well—even very much less well—living in the community without any support, as compared with living in the protective placement. A meaningful assessment of the potential for less restrictive alternatives to protective placement would have to include discussion of specific alternatives and their likelihood of success (or why success was unlikely). In sum, there appears to have been no exploration by the parties and the circuit court how care might be provided for this young man in a residential setting other than the protective placement.[8]

---

[8] The County appears to have gotten off track at a key point during the hearing. After Dr. Stress testified to his (unexplained) conclusion that the protective placement would be R.F.'s "least restrictive environment," the County followed up with the following questions:

> Q. Would an adult family home, as long as the right precautions were in place, would that potentially meet his needs?

(continued)

¶20 Said in more general terms, it is fatal to the County's argument that it completely fails to account for the following possibility: that R.F. was incapable of providing for his own care or custody when not provided some kind of protection under WIS. STAT. ch. 55 or his guardianship, but that he could do so with some combination of restrictions or protections that do not include protective placement specifically.

¶21 Turning to the circuit court's oral ruling, the court said in a conclusory manner that "[t]he adult family home is still the least restrictive environment consistent with [R.F.'s] needs," without explaining on what basis the court made this determination. The closest the court may have come to an explanation was the following somewhat vague statement, which did not address evidence regarding any concrete alternatives to support R.F. when he was, theoretically, not in protective placement. The court characterized Dr. Stress as having testified that, if R.F. "were to step up and start showing … responsibility" for setting "an alarm," then doing "chores," making breakfast, and "liv[ing] kind of a more structured life," "on a consistent basis," then that "might be enough to warrant [Dr. Stress] changing his recommendations to a more step-down in restrictiveness to something more independent." The court did not explain why it

---

A. Yes.

Q. So would you support continued placement in his current placement?

A. Yes.

Instead of asking Dr. Stress to explain and support his conclusion about protective placement being the least restrictive environment, the County directed him to a different topic, namely, whether R.F.'s needs could be met in the protective placement. This line of questioning failed to show that less restrictive options could not also meet R.F.'s needs.

would necessarily be true that less restrictive means could not result in "a more structured life" for R.F.

¶22    However, the County's failure to address the substance of the argument and the court's failure to squarely address the topic based on record evidence are not necessarily dispositive. If a circuit court does not explain the reasoning behind a discretionary decision, "we may," and ordinarily do, "search the record to determine if it supports the court's discretionary decision." *See Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737; *Brezinski v. Barkholtz*, 71 Wis. 2d 317, 327, 237 N.W.2d 919 (1976).

¶23    Searching the record for evidence on this topic that could support the court's discretionary determination, I locate only the following. First, Dr. Stress made a conclusory, unexplained assertion that R.F.'s "least restrictive environment would be in a facility that provides him with 24-hours-a-day[,] seven-days-a-week supervision in a secured setting with monitored egress."[9] Second, Dr. Stress offered the general opinion that "if [R.F.] puts forth effort, maybe he could demonstrate" an ability to "complete his activities of daily living," to "manag[e] his money appropriately," "to wash his clothing," and to "not participat[e] in vulnerable activities such as being on the internet," this "could result in a less restrictive environment and intervention in the future." However, as with the

---

[9] The only direct statement on this topic in Dr. Stress's written report, which was admitted as evidence at the annual review hearing, was stated in the same conclusory terms:

> It is this psychologist's opinion, to a reasonable degree of psychological certainty[,] that [R.F's] least restrictive environment is to be placed in a facility that provides him with 24 hours a day, seven days a week supervision, in a secure setting with monitored egress.

12

circuit court's similar conclusion quoted above, this did not address evidence regarding any concrete alternatives to protective placement.

¶24   It is true that, as summarized above, both of the pro-protective placement witnesses and the circuit court addressed not only R.F.'s deficits in his ability to engage in the activities of daily living, but in particular emphasized R.F.'s forms of vulnerability to persons who might take advantage of R.F. or cause him to fall into self-destructive habits. However, as far as the County now argues and the record self-evidently reveals, there was no evidence before the circuit court on the topic of whether less restrictive forms of protection for R.F. than protective placement could address the vulnerability side of the equation. Thus, the parties and the circuit court apparently never engaged in concrete discussion of whether the available and affordable alternatives to protective placement might be sufficient.

¶25   The circuit court here was presented with conflicting expert opinions on various issues, and I must defer to the finder of fact's assessments of credibility and assignment of weight to various pieces of evidence. But so far as the County explains, or our review of the record reveals, the court was not presented with any evidence, much less evidence rising to the level of being clear and convincing, directly bearing on the issue of whether the protective placement was "the least restrictive environment." It was the County's obligation to adduce evidence on this topic; the court's determination cannot be based on speculation or assumptions about the facts. *See **State v. Salas Gayton***, 2016 WI 58, ¶19, 370 Wis. 2d 264, 882 N.W.2d 459 ("An exercise of discretion 'contemplates a process of reasoning. This process must depend on *facts that are of record or that are reasonably derived by inference from the record* and a conclusion based on a logical rationale founded upon proper legal standards.'" (emphasis added; quoted

source omitted)); ***McCleary v. State***, 49 Wis. 2d 263, 277, 282, 182 N.W.2d 512 (when a circuit court failed to provide adequate reasoning or explanation for a discretionary decision it "fail[ed] to exercise discretion"; "[d]iscretion is not synonymous with decision-making"). The County fails to develop an argument that the circuit court had an evidentiary basis from various pieces of testimony to reasonably infer that protective placement is the "least restrictive environment." I note that this would have required the County, at a minimum, to direct this court to specific evidence addressing less restrictive modes of protection. I would have to abandon my neutral role to attempt to construct such an argument, which I cannot do.

¶26    In sum, the County fails to show that it met its burden at the annual review hearing to present clear and convincing evidence that the "least restrictive environment" requirement was met.

## CONCLUSION

¶27    For all of these reasons, the October 20, 2021 order for protective placement is reversed, and this case is remanded to the circuit court with directions to enter an order allowing R.F. to transition to protective services.

*By the Court*.—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

14