**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 6, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2025AP2640**

Cir. Ct. No. 2010GN246

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

IN THE MATTER OF THE GUARDIANSHIP AND PROTECTIVE PLACEMENT OF C.O.:

WAUKESHA COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

C.O.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Waukesha County: CODY J. HORLACHER, Judge. *Affirmed*.

¶1    NEUBAUER, P.J.[1] C.O., referred to herein by the pseudonym Cathy,[2] appeals from an order of the circuit court continuing her protective placement. Cathy argues Waukesha County (the County) failed to meet its burden of proving that she has a primary need for residential care and custody, that she "is so totally incapable of providing for … her own care or custody as to create a substantial risk of serious harm to … herself or others[,]" and that her current placement is the least restrictive environment consistent with her needs. WIS. STAT. § 55.08(1)(c). Because the record supports the circuit court's order, this court affirms.

¶2    The circuit court initially ordered Cathy's protective placement in February 2011, due to her chronic alcohol dependency. She has subsequently undergone twelve annual *Watts*[3] reviews. In July 2024, the County filed a petition for annual review. Cathy contested that petition at a hearing held in February 2025, at which the County presented testimony from Dr. Peder Piering, a court-appointed psychologist, Margy Brown, a corporate guardian, and Gabriella Allen, an Adult Protective Services social worker. Cathy presented testimony from Sandra Amidon, who has been employed at her residence since 2017 and has been its manager since April of 2024.

¶3    Dr. Piering met with Cathy about four months prior to the hearing and prepared a written report of his findings that was admitted into evidence

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] For ease of readability, we utilize "Cathy" as a pseudonym.

[3] *State ex rel. Watts v. Combined Cmty. Servs. Bd. of Milwaukee Cnty.*, 122 Wis. 2d 65, 80, 362 N.W.2d 104 (1985).

without objection. Piering diagnosed Cathy with Wernicke-Korsakoff syndrome, a "[m]ajor neurocognitive disorder, secondary to alcohol-use disorder[.]" Piering confirmed that Wernicke-Korsakoff syndrome is a "degenerative brain disorder" that is "permanent in nature[.]" He explained that Cathy "exhibits moderate to severe difficulty in … reasoning[,]" that she "has very little insight into her condition[,]" and that "she does not appreciate the lingering and long-term effects this has had on her functioning." He also testified, however, that Cathy has shown improvement in her current placement. Specifically, he observed that Cathy was "no longer confabulating[,]" has been "less aggressive[,]" and has "develop[ed] a routine that's been helpful for her." Piering testified that the last time Cathy consumed alcohol was in 2021, when she had consumed hand sanitizer for the alcohol it contained. Despite Cathy's progress, Piering stated that he has "concerns" about Cathy being moved to a less-restrictive environment and that she would "[c]ertainly … need supervision on a daily basis." He testified that Cathy admitted that she still craves alcohol and that she'll "always crave it."

¶4      Gabriella Allen, Adult Protective Services social worker, confirmed that Cathy "continues to have a primary need for residential care and custody[,]" explaining that Cathy "doesn't seem to have insight into how [her] long-term alcohol use has impacted her cognition and her physical health." Allen further confirmed that Cathy "requires 24-hour supervision[,]" and that she "continue[s] to be so totally incapable of providing for her own care and custody that it creates a substantial risk of serious harm to herself or others[.]" Allen opined that, if not protectively placed, Cathy "would, essentially, digress to seeking alcohol," and that this would "have some pretty significant cognitive and physical health consequences," including "potentially putting [Cathy's] life at risk." Allen explained that Cathy's current placement is a Community-Based Residential

Facility (CBRF) and that "the next less restrictive [environment] would be a supported apartment." When asked whether a supported apartment would be an appropriate environment for Cathy, Allen indicated that it would not because a supported apartment would not "have staff presence" around the clock and that Cathy "would lose the structure and schedule that the [CBRF] staff create for her."

¶5      Sandra Amidon, the manager of Just Like Home, Cathy's CBRF, testified that Cathy "has made great strides since" Amidon came on board. She explained that Just Like Home "pass[es] her medications" and "serve[s] her meals" but that Cathy is otherwise "pretty much independent." Cathy "does her own laundry, cleans her room[,] … [and] showers regularly." Cathy is also permitted to leave the facility to attend church unsupervised. Amidon testified that, in at least the last few years, Cathy has not exhibited "any alcohol-seeking behaviors in [the CBRF] or at church[.]" When asked how Cathy would "do in a supportive apartment setting with some type of monitoring[,]" Amidon testified that a "supported apartment with staff on site and monitoring would be okay for her."

¶6      Margy Brown also testified, representing Supportive Community Services, Cathy's corporate guardian. Brown explained that she is not Cathy's case manager and that she was filling in for her colleague who was unable to attend the hearing. When asked, Brown confirmed that Adult Community Services does not believe that "any type of new facility or transfer of placement" would be appropriate for Cathy. Brown also expressed her concern that Cathy may continue "alcohol seeking" behaviors in an environment with "less supervision."

¶7     Following the close of evidence and arguments, the circuit court found the County met its burden, that Cathy continued to meet the standard for protective placement, and that Cathy's current placement remained the least restrictive environment consistent with her needs. Specifically, the court noted Cathy's inconsistent statements to Dr. Piering regarding her continued cravings for alcohol and Cathy's consumption of alcohol in 2021, and indicated it was "extremely concerned with [Cathy's] inability to recognize all medications and the medication schedule that she would be required to take, if left to her own devices in a supported apartment setting." However, the court also "direct[ed] the department to investigate whether or not a change of facility would be appropriate" for Cathy, noting the limited opportunities offered by Just Like Home. Cathy appeals.

¶8     The decision to continue a protective placement "involves a determination of [a ward's] best interests, and … this determination is committed to the [circuit] court's discretion." *Anna S. v. Diana M.*, 2004 WI App 45, ¶7, 270 Wis. 2d 411, 678 N.W.2d 285. A circuit court's factual findings are reviewed with deference and will not be set aside unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2). "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *Metropolitan Assocs. v. City of Milwaukee*, 2018 WI 4, ¶62, 379 Wis. 2d 141, 905 N.W.2d 784. Whether the evidence satisfies the applicable legal standards is a question of law this court reviews de novo. *See Coston v. Joseph P.*, 222 Wis. 2d 1, 22-23, 586 N.W.2d 52 (Ct. App. 1998).

¶9     To continue a protective placement, the circuit court must find by clear and convincing evidence that: (1) "[t]he individual has a primary need for residential care and custody"; (2) "the individual … is an adult who has been

determined to be incompetent by a circuit court"; (3) "[a]s a result of a developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacit[y], the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others"; and (4) the "disability … is permanent or likely to be permanent." WIS. STAT. §§ 55.08(1), 55.10(4)(d), 55.18(3)(e)1. If the court finds that the individual continues to meet the standards under § 55.08(1), "and the protective placement of the individual is in the least restrictive environment[, …] the court shall order the continuation of the protective placement in the facility in which" the individual currently resides. Sec. 55.18(3)(e)1.

¶10 On appeal, Cathy argues the County "introduced insufficient evidence to support continuation of [her] protective placement." Specifically, she argues the evidence showed that Cathy is "functionally independent" and, thus, "no longer has a primary need for residential care and custody."

> Applying the common meaning of the phrase "primary need for residential care and custody" in WIS. STAT. § 55.08(1)(a), … the person must have a primary need (1) to have his or her daily needs provided for in a residential setting; and (2) to have someone else exercising control and supervision in that residential setting for the purpose of protecting the person from abuse, financial exploitation, neglect, and self-neglect.

*Jackson County DHHS v. Susan H.*, 2010 WI App 82, ¶16, 326 Wis. 2d 246, 785 N.W.2d 677. In support of her argument, Cathy relies on Allen's testimony that Cathy is "independent with all aspects of her personal care," "does not require any assistive devices in her daily functioning," and "actively participate[s] in her own … care appropriately." She also noted Dr. Piering's testimony that Cathy remains

independent in her activities of daily living and Amidon's testimony that Cathy is an "independent resident" at Just Like Home. Cathy's argument is unpersuasive.

¶11 Our state supreme court has clarified that "[p]rotective placement may result from a mere inability to live independently in the community." *Milwaukee Cnty. Prot. Servs. Mgmt. Team v. K.S.*, 137 Wis. 2d 570, 576, 405 N.W.2d 78 (1987). Thus, an individual cannot claim that the County failed to provide sufficient evidence that the individual has a primary need for residential care and custody simply because the individual is capable of performing some daily tasks. The record demonstrates Cathy is reliant on staff for most meals as well as for the administration of her medication. The circuit court's "extreme[] concern[]" regarding Cathy's inability to self-medicate is well-supported. In his report, Dr. Piering opined that Cathy lacks the "evaluative capacity to consent to … voluntary medication, including psychotropic medication that is in [her] best interests[.]"

¶12 Cathy also argues the County failed to prove a substantial risk of serious harm under WIS. STAT. § 55.08(1)(c) by relying on "speculative fears of relapse rather than current behavior." She suggests the County relied on "[v]ague references to unrepeated dangerous conduct" and "historical alcohol dependency" in lieu of evidence of a "substantial and specific foreseeable risk of harm." This assertion is unsupported by the record.

¶13 The circuit court specifically noted its "great concern" regarding Cathy's consumption of alcohol in 2021, her continued lack of insight and understanding into her condition, and her "inability to recognize all medications and the medication schedule that she would be required to take, if left to her own devices." The court properly relied on Dr. Piering's testimony that Cathy exhibits

"moderate to severe impairment" in executive functioning, "moderate to severe difficulty" in reasoning, and "doesn't have any plans" or "coping mechanisms" to avoid consuming alcohol if she were to gain access to it. The court also noted that "even" Amidon, who testified on behalf of Cathy, indicated that Cathy "didn't understand all the medications that she was on or recall when she needed to take [them]." The court did not err when it concluded that Cathy's history of alcohol consumption, expert testimony regarding her lack of insight into her condition, her inability to manage her own medications, and her lack of any plans or coping mechanisms to avoid further episodes of alcohol consumption established a substantial and specific risk of serious harm to herself.

¶14 Finally, Cathy argues the "County failed to provide sufficient evidence that the current placement is the least restrictive alternative." Protective placement must occur "in the least restrictive environment and in the least restrictive manner consistent with the needs of the individual to be protected and with the resources of the county department." WIS. STAT. § 55.12(3).

> "Least restrictive" means that which places the least possible restriction on personal liberty and the exercise of rights and that promotes the greatest possible integration of an individual into his or her community that is consistent with meeting … essential requirements for health, safety, habilitation, treatment, and recovery and protecting him or her from abuse, exploitation, and neglect.

WIS. STAT. § 54.01(18).

¶15 Despite Cathy's assertion that a supported apartment could be an appropriate alternative environment, the circuit court did not err when it found that a CBRF was the least restrictive environment for which Cathy could be protectively placed. Specifically, the court, at the conclusion of the *Watts* hearing, expressed its concern that a change of placement could potentially jeopardize "the

progress that she objectively has made behaviorally." This conclusion was adequately supported by the record. While Dr. Piering testified a supported apartment "[c]ould be of help to [Cathy,]" he made it clear that "[c]ertainly, she would need supervision on a daily basis." Cathy's social worker testified there are *some* supported apartments at which "there are staff present … 24 hours a day[,]" but that "[i]t varies." Because Dr. Piering's assessment that a supported apartment would be appropriate only if it coincided with around-the-clock staff presence and supervision, and because, according to the evidence provided at the *Watts* hearing, constant staff presence and supervision is not guaranteed at every supported apartment, the court did not err when it concluded that a CBRF is the least restrictive environment suited to Cathy's needs. For these reasons, the order of the circuit court is affirmed.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.